**BRODERICK, Collector of Internal Revenue, v. KEEFE et al.**

**No. 3513.**

Circuit Court of Appeals, First Circuit.

May 14, 1940.

James P. Garland, Sp. Asst. to Atty. Gen. (Samuel O. Clerk, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., Arthur L. Jacobs, of Washington, D. C., and J. Howard McGrath, of Providence, R. I., on the brief), for appellant.

Richard F. Canning, of Providence, R. I. (Andrew P. Quinn, of Providence, R. I., on the brief), for appellees.

Roger B. Hull, of New York City, for National Ass'n of Life Underwriters, amicus curiæ.

Before MAGRUDER, Circuit Judge, and PETERS and SWEENEY, District Judges.

SWEENEY, District Judge.

This is an appeal from a judgment of the District Court for the District of Rhode Island entered in favor of the plaintiffs below. The question presented is whether, after the exhaustion of the $40,000 exemption provided in the statute, the proceeds of two life insurance policies, taken out by the decedent on his own life, should have been included in his gross estate subject to federal estate tax. Both policies are sufficiently similar to treat them as one.

The facts disclose that John W. Keefe, who died on August 3, 1935, was the owner of two insurance policies for which he paid the annual premiums. In each case, on April 18, 1930, he executed a "Nomination of Beneficiary and Request"* in which he designated a "vested, irrevocable benefi-

---

* I, John W. Keefe, the insured under the aforesaid policy, do hereby nominate and request that if the said policy becomes a claim by reason of my death, the proceeds due thereunder be retained by the Company in accordance with the conditions and provisions of Instalment Option C and paid as follows:

The interest income shall be paid monthly to my daughter, Gertrude S. Keefe, if she survives me, during her lifetime.

At the death of the survivor of myself and my said daughter the proceeds or principal sum shall be divided and paid in equal lump sum payments to the then surviving issue of my said daughter.

If the survivor of myself and my said daughter is not survived by any issue of my said daughter the proceeds or principal sum shall be divided into equal shares for my other daughters, Alice S. Keefe and Mary R. Keefe, which shares shall be paid as follows:

The shares of such daughters shall be retained under the said Option C and the interest income thereon paid monthly to my said daughters during their respective lives. At the death of either of my said daughters her respective share of the principal and interest shall pass and be paid to the survivor of my said daughters in accordance with the conditions and provisions governing the payment of her respective share. At the death of the survivor of my said daughters the principal sum retained by the Company shall be paid in one sum to the estate of such survivor.

If at the death of the survivor of myself and my said daughter, Gertrude S. Keefe, no issue of my said daughter are then living and one of my said other daughters is not then living, all of the proceeds or principal sum shall be paid to the survivor of my said other daughters in accordance with the conditions and provisions governing the payment of such survivor's share.

If my said daughter, Gertrude S. Keefe, survives me and no issue of hers survive her and neither of my said other daughters survive her, the principal sum retained by the Company shall be paid in one

sum to the estate of my said daughter, Gertrude S. Keefe, at her death.

My said daughter, Gertrude S. Keefe, is herewith nominated as a vested, irrevocable beneficiary, and I declare that her consent in writing is necessary before any subsequent change in the beneficial interest can be made. However, I expressly withhold any vested interest from the contingent beneficiaries named hereunder, and the right is expressly reserved to cancel or change the interests of such contingent beneficiaries without their consent.

It is especially agreed that the right is reserved to myself and my said daughter, Gertrude S. Keefe, to secure loans from the Company on this policy and to assign the same to the Company on the signatures of myself and my said daughter, Gertrude S. Keefe, as collateral security for such loans, without the consent of any contingent beneficiary and without annulling or altering the terms of this nomination and request.

It is understood and agreed that the last survivor of my said daughters shall have the privilege while receiving interest income payments of withdrawing in one sum all of the principal sum retained by the Company. This right of withdrawal shall not pass to, or be exercised by, any attorney, trustee, assignee, or any other person in her behalf. The right to such withdrawal shall not be considered as having been effectively exercised unless the Company shall have received at its home office a written and dated request for withdrawal signed by such daughter entitled to make such withdrawal.

This nomination and request cancels and supersedes any nomination of any and all beneficiaries heretofore made.

The foregoing provisions of this nomination and request shall be null and void if the proceeds due under the said policy or policies at maturity, or at the death of the insured, are less than one thousand dollars, or if all the beneficiaries named herein predecease the insured; and in either event the said proceeds then due shall be paid in one lump sum to the executors or administrators of the insured. If the said insured shall be living at the

ciary", who "if she survives me" was to receive the income during her lifetime, and it was further declared that "her consent in writing is necessary before any subsequent change in the beneficial interest can be made" or any loans secured on the policies. After having designated the primary beneficiary, the insured also designated certain contingent beneficiaries who would receive benefits after the death of the primary beneficiary. As to the contingent beneficiaries, the assured expressly withheld any vested interest and reserved the right to cancel or change the beneficiaries without their consent.

The executrices filed a return, but did not include in the gross estate any value on account of the policies described. In 1937, the Commissioner made a deficiency assessment on this account which was paid. These suits were brought to recover the assessment in whole or in part.

The Revenue Act of 1926, c. 27, 44 Stat. 9, as amended by, section 803(a), Revenue Act 1932 and Section 401 of the Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A.Int.Rev.Acts, p. 227, is as follows:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—* * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death, without such con-

sideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title;

"(d) (1) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

The Government contends, if it is determined that the proceeds of this insurance are not brought into the gross estate by subdivision (g) above, that subdivision (d) covers the proceeds of an insurance policy as well as any other property. We prefer to reach our decision without recourse to subdivision (d). See Walker v. United States, 8 Cir., 83 F.2d 103, and to an opposite conclusion see Paul on Life Insurance and Federal Estate Tax, 52 Harvard Law Review 1051. We can rest our decision in this case squarely on subdivision (g).

The language of Section 302(g) appears to cover much more than the Government claims for it, and seems broad enough to include the proceeds of policies involving no transfer of property in a testamentary sense. See Harvard Law Review, Vol. 52, 1047. However, it has never been the contention of the Treasury Department that subdivision (g) is as broad as this, and, in Treasury Regulations 80, Article 27, it limits the type of policies that are to be included in the gross estate to those where "the decedent possessed at the time of his death any of the legal incidents of ownership". Since the adoption of this regulation, Congress has failed in its vari-

expiration of the endowment period (if such period is named in said policy or policies), then said policy or policies and all rights thereunder shall revert to the said insured, unless otherwise provided herein.

ous amendatory acts to change this administrative interpretation. We are therefore bound to follow it. It is the settled rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration will not be disturbed except for weighty reasons. Brewster v. Gage, 280 U.S. 327, 336, 50 S.Ct. 115, 74 L.Ed. 457. Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval, and have the effect of law.· Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52.

Section 302(g) and the Treasury Regulations promulgated thereunder seek to compel an estate, after the specified exemption, to pay a tax on proceeds of insurance policies in which the insured had an interest or legal incidents of ownership up to the time of his death. In Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388, the Supreme Court held, where an insured retained until his death a legal interest in policies which gave him the power of disposition, and there was at his death a shifting of the economic benefits to the beneficiaries free from the exercise of the powers retained during the lifetime of the insured, that such a transfer was a legitimate subject of a transfer of a transfer tax. At page 338, of 278 U.S., at page 129 of 49 S.Ct., 73 L.Ed. 405, 63 A.L.R. 388, the court said: "Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax."

■■■ The gift to the primary beneficiary, although declared to be a full and complete gift to a "vested, irrevocable beneficiary", was nevertheless expressly made contingent upon the primary beneficiary's surviving the insured. It was only a life estate. Consequently, it is plain that the event which effectively transferred the life estate to the beneficiary was the death of the insured. Cf. Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. ——, 125 A.L.R. 1368; Klein v. United States, 283 U.S. 231, 234, 51 S.Ct. 398, 75 L.Ed. 996. While these cases dealt with Section 302 (c), by parity of reasoning they throw light upon the proper construction of Section 302

(g). The insured retained the power "to cancel or change the interests" of the contingent beneficiaries "without their consent". Under the power reserved, the insured, in the event of surviving the primary beneficiary, became complete master of the policy and could dispose of it as he pleased.

It follows that as to all the beneficiaries, the death of the insured was the "indispensable and intended event" [309 U.S. 106, 60 S.Ct. 448, 84 L.Ed. ——, 125 A.L.R. 1368] which effected the transmission of the estate from the dead to the living. See Klein v. United States, supra. As the court pointed out in the Hallock case the basic purpose of the estate tax is to bring within the gross estate of the transferor that which he gave "upon a contingency terminable at his death".

It is to be noted, further, that in the event of the insured's surviving the primary and contingent beneficiaries, the insured had a reversionary interest in the proceeds of the policy. We are not called upon in this case to decide whether this possibility of reverter, standing alone, would have warranted the inclusion of the proceeds of the policy in the gross estate of the insured. See Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160; Industrial Trust Co. v. United States, 296 U.S. 220, 56 S.Ct. 182, 80 L.Ed. 191; with which compare Helvering v. Hallock, supra.

The powers which this insured retained, and which became extinct at his death, thus effecting a transfer or a possibility of transfer of economic benefits, constituted such a legal interest and were such incidents of ownership as to bring the value of the policies within the gross estate of the insured for estate tax purposes. See Chase National Bank v. United States, supra, and Igleheart v. Commissioner of Internal Revenue, 5 Cir., 77 F.2d 704, 711.

■■■ The taxpayer further contends that the insurance proceeds should not be included in the gross estate since the issuance of the policies antedated the effective date of the Revenue Act of 1918, 40 Stat. 1057, and cites Lewellyn v. Frick, 268 U.S. 238, 45 S.Ct. 487, 488, 69 L.Ed. 934, and Bingham v. United States, supra, as authority for the rule that the Act does not apply to insurance policies issued prior to the effective date of the first taxing statute. We do not think that the cases cited by the taxpayer are entitled to this construction. In both of them not only were the policies is-

sued prior to the passage of the 1918 statute, but the beneficiaries had also been named long before the passage of that Act. Consequently, the question before the court in both cases was whether the Act applied to policies where the policies had been issued, and the transfer of interest in those policies had been made, before the adoption of the taxing statute. In the Frick case, Mr. Justice Holmes stated that doubts as to the constitutionality of a similar taxing statute could be "avoided by construing the statute as referring only to transactions taking place after it was passed", and that the "general principle 'that the laws are not to be considered as applying to cases which arose before their passage' is preserved". We think that the word "transactions" as used by Mr. Justice Holmes is not directed to the issuance of the policies, but more likely was intended to mean the action which effected the transfer of interest in the insurance from the insured to the beneficiary or assignee. Support for this meaning of the word "transactions" is found in the second ground for the court's decision in the case of Bingham v. United States, supra, where it said that the principles announced in Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239, and Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35, were decisive in favor of the taxpayers, and that those principles "establish that the title and possession of the beneficiary were fixed by the terms of the policies and assignments thereof, beyond the power of the insured to affect, many years before the act here in question was passed". [296 U.S. 211, 56 S. Ct. 181, 80 L.Ed. 160.]

What effect the decision in Helvering v. Hallock, supra, which rejected the theories announced in the St. Louis cases, would have upon the Bingham case is not determined here. Nevertheless, the basis for the Bingham decision, at least in part, was that the rights of the parties to the transfer of interests were fixed prior to the passage of the taxing statute. In the instant case, the rights of the parties to the transfer of interest were not fixed until after the passage of the Act. There was therefore no imposition of an unexpected liability that, if known, could have been avoided by those concerned, as was found in both the Frick and Bingham cases. The tax imposed being in the nature of a transfer tax and the actual transfer of interests

having taken place after the passage of the Act, we can see no reason why the proceeds of the policies should not be included in the gross estate of the deceased. Having found that the insured did retain incidents of ownership, in addition to a possibility of a reverter, we are of the opinion that the Frick and Bingham cases are not controlling.

The judgment of the District Court is reversed, and the case is remanded to that court with directions to enter judgment for the defendant.