## SCHONGALLA v. HICKEY, U. S. Collector of Internal Revenue.

### Civ. No. 983.

District Court, N. D. New York.

July 31, 1943.

On Reargument March 20, 1944.

Edward A. Alexander, of New York City (John A. Klett, of New York City, of counsel), for plaintiff.

Ralph L. Emmons, U. S. Atty., of Syracuse, N. Y., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Leon F. Cooper, Sp. Assts. to Atty. Gen., for defendant.

BRENNAN, District Judge.

This is an action to recover the sum of $15,594.46, which represents a part of the federal estate taxes levied by reason of the inclusion in the gross estate of the decedent the proceeds of four life insurance policies.

The facts have been stipulated by the attorneys for the respective parties, and the

decision rests upon the law applicable thereto.

William Schongalla died on January 12, 1938, at the age of about sixty-four years, leaving him surviving his widow, Anna, his two sons, William Schongalla, Jr., then about nineteen years of age, and Edward Schongalla, then about eighteen years of age. He was also survived by his mother, Minna Schongalla, then about eighty-five years of age.

In addition to life insurance policies aggregating more than $40,000, payable to beneficiaries other than his estate, there was in force at the time of decedent's death four life insurance policies upon his life, the proceeds of which were included in the gross estate of the decedent. An estate tax was levied over the protest of the executor for the recovery of which this action is brought.

Two of the four policies were issued by the Union Central Life Insurance Company on May 20, 1924, in the face amount of $30,000 each. These policies were identical in terms, except that William Schongalla, Jr., son of the decedent, was named as beneficiary in one, and Edward Schongalla another son, was named as beneficiary in the other.

These two policies were of the endowment type. Each provided upon the face thereof that upon the maturity date; to-wit: the 12th day of July, 1959, or, if the insured died prior to such maturity date, then the proceeds of the policy should be paid to the beneficiary, or to the executors, administrators or assigns of such beneficiary. Each policy expressly states upon its face that it is without privilege of change of beneficiary.

It was further provided in agreements attached thereto, signed by the decedent, that in the event of the death of the insured before the policies matured as endowments, then the proceeds should be retained by the insurance company; interest upon the principal sums should be paid in monthly installments to the named beneficiary until he reached the age of twenty-four years, when one-third of the principal sum should be paid to him; an additional one-third should be paid when he attained the age of thirty years, and the final one-third when he attained the age of thirty-five years; interest upon the retained balance to be paid monthly. It was also provided in the agreements "in the event I survive my said son, said net sum shall be paid my executors, administrators or assigns".

The other two policies were issued by the Metropolitan Life Insurance Company. One of them, dated October 20, 1903, was in the principal sum of $3,000, the beneficiary therein being the decedent's mother, Minna Schongalla, "if living, otherwise to the legal representatives of the insured". It appears to be conceded that the words "* * * no change of beneficiary" were endorsed thereon.

The other policy, dated October 10, 1892, was payable upon the death of the insured to "either the executor or administrator, husband or wife, or any relative by blood or lawful beneficiary of the insured". The proceeds of this particular policy at the time of decedent's death amounted to $112.-19 and was paid to Minna Schongalla.

The Government contends that the proceeds of all four of the policies are taxable under the provisions of Section 302(c) of the Revenue Act of 1926 as amended, 26 U.S.C.A.Int.Rev.Code, § 811(c), by reason of the fact that the decedent retained or was possessed of an interest in each of the policies, since the proceeds of each of said policies would be received by him should he survive the respective beneficiaries.

Further, the Government contends that said proceeds are taxable under the provisions of Subdivision g, since the same constituted an excess of $40,000 receivable by beneficiaries other than the executor as insurance under policies taken out by the decedent upon his own life, since the deceased retained an interest therein which was terminable only at his death.

The plaintiff contends that the decedent possessed no incidents of ownership or interests in the policies either prior to or at the time of his death, and, therefore, there could be in his estate no taxable interest within the meaning and scope of either subdivisions of the Revenue Act.

The case has been exhaustingly briefed by the attorneys for both parties upon the theory that the decision involved only the determination of the question as to inclusion in the gross estate of the decedent the proceeds of insurance policies, each payable to a named beneficiary if he should survive the decedent; otherwise to his estate or assigns.

The question is referred to but not decided in Broderick v. Keefe, 1 Cir., 112 F.2d

293, and, as in that case, an examination of the policies themselves should be made in order to determine the interests, if any, of the decedent therein.

On May 9, 1924, the A. R. Hueuser Co., Inc., of which the decedent was president, sole stockholder and a director, applied to the Union Central Life Insurance Company for the issuance of insurance upon the life of decedent in the total amount of $200,000. Two policies were issued in the amounts of $80,000 and $40,000, to be payable to Anna Schongalla, wife of the decedent, as beneficiary; a policy in the amount of $20,000 to be payable to Minna Schongalla, mother of decedent, as beneficiary; a policy in the amount of $30,000 to be payable to Edward R. Schongalla, a son, as beneficiary, and a policy in the amount of $30,000 to be payable to William Schongalla, Jr., a son, as beneficiary.

The application was signed by the corporation, by the decedent as president.

The question of inclusion of the proceeds of the last two mentioned policies in the gross estate of the decedent is to be determined in this action.

The policies purport to be signed by the insurance company at the City of Cincinnati, Ohio, on May 20, 1924, and the stipulated facts and briefs assume that that date was the effective date thereof.

The policies provided in Paragraphs 34, 35, 36 and 37 that the owner of the policy by written notice to the company at its home office may elect to have the sum payable under each policy payable in one of three ways, which are described as "Option 1", in Paragraph 35; "Option 2" in Paragraph 36 and "Option 3" in Paragraph 37. The insurance company agreed to furnish a form of the written notice above referred to upon request.

On May 20, 1924, the date of the issuance of the policies, the decedent, as the insured, indicated on a form furnished by the insurance company a notice of change of beneficiary, and election of settlement option in the event of the death of the insured. This agreement is attached to and became part of each policy, and it is in this agreement that the words "In the event I survive my said sons, said net sum shall be paid to the executors, administrators or assigns" appear, and a further limitation is provided therein to the effect that the benefits accruing to any beneficiary thereunder shall not be transferable, or subject to commutation or incumbrance, or to legal process.

Paragraph 33 of the policies provides that none of the terms thereof shall be modified, save by an agreement in writing, signed by certain officers of the insurance company. The agreements indicate that they were accepted by the insurance company at its home office in Cincinnati, Ohio, on the 8th day of September, 1924, and they bear at least the signature of one of the officers provided for in Paragraph 33.

An examination of the Metropolitan Life Insurance Company policy, dated October 20, 1903, discloses that after the premiums thereon had been paid for three or more years, the company will grant, as the insured or assured may elect, one of the following options: (a) a loan; (b) the cash surrender value; (c) a paid-up policy.

The second Metropolitan Life Insurance Company policy, dated October 10, 1892, was of the so-called "industrial" type. No named beneficiary was designated therein. It provided for a weekly premium payment, and contains a so-called "facility of payment" clause permitting payment by the company of the proceeds of the policy to either the executor or administrator, husband or wife, or any relative by blood or lawful beneficiary of the insured.

In addition, this policy provides that after it had been in force five years, and after the insured shall have reached the age of eighteen years, the insured might make written application upon blanks furnished by the insurance company. The company would then issue a paid-up term policy payable to the estate of the insured.

The Union Central policies above described present an unusual situation. As originally issued, the proceeds thereof could not be included in the gross estate of the decedent for tax purposes. Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Treasury Regulations 80, Article 27.

The agreement attached to each policy, accepted almost four months after the policy was originally issued, causes the difficulty here. It is noted that although the agreement is dated the same as the policy, it evidently was actually signed by the decedent after the actual issuance of the policy, inasmuch as it contains the policy number. It may well be that the agreement was post-dated with the idea that it might become effective at the same time as

the effective date of the policy, but, of course, it could not become effective until after it had been accepted by the insurance company.

■ It seems to be the settled law that a beneficiary can not be deprived of an interest in a life insurance policy without his consent where the right to change the beneficiary is not reserved. Morgan v. Penn. Mut. Life Ins. Co., 8 Cir., 94 F.2d 129; Davis v. Modern Industrial Bank 279 N.Y. 405 at page 409, 18 N.E.2d 639, 135 A.L.R. 1035.

■ Here prior to the attachment of the agreement to the policy the beneficiary was the owner thereof. Pennsylvania Co., etc., v. Commissioner of Internal Revenue, 3 Cir., 79 F.2d 293; Ruckenstein v. Metropolitan Life Ins. Co., 263 N.Y. 204, 188 N.E. 650.

Grave doubt may be entertained as to the validity of the agreement. However, no question as to its validity is raised here, and the effect of the agreement is in part to change the contingent beneficiary in each policy from the administrators, executors or assigns of the named beneficiary to the executors, administrators or assigns of the decedent. If we treat the agreement as valid, then there is a plain indication that, as between the insurance company and the decedent, the decedent was recognized and considered as the owner of the policy rather than the individual beneficiaries who were then less than five years of age.

■ The stipulated facts show that the insurance company, the executor of the estate of the decedent, and the beneficiary have considered all the terms of the agreement in full force and effect. The beneficiaries are now over the age of twenty-one years. A writing recognized and acted upon by all interested parties can not be discarded for tax purposes.

If it is recognized that the decedent was the owner within the language of Paragraph 34 of the policy and that he had the right to change the contingent beneficiary, there is no reason to deny to him the ownership and powers described in Paragraphs 19 to 23 inclusive; that is, the option to use the surrender value of the property (a) in the purchase of extended insurance; (b) for the purchase of paid-up insurance; (c) as a loan; and (d) to collect the surrender value in cash.

■ The plaintiff's argument that the decedent held no interest or incidents of ownership in the policies contradicts itself in the recognition of the effectiveness and validity of the terms of the agreement.

The Metropolitan Life Insurance Company policy, dated October 20, 1903, discloses that the insured, together with the named beneficiary, was possessed of the rights (a) to obtain a loan; (b) to surrender the policy for a cash value; (c) to surrender the policy and obtain a paid-up policy. In addition, the estate of the decedent was the beneficiary in the policy contingent upon the death of the named beneficiary.

The Union Central policies and the above Metropolitan policy can be disposed of upon the same legal principles. The proceeds of these policies come to the beneficiaries through the death of the insured. "Such a succession follows directly within Section 302-g", Revenue Act of 1926, 26 U.S.C.A.Int.Rev.Code, § 811(g). Chase National Bank v. United States, 2 Cir., 116 F.2d 625.

The reasoning of Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, is applicable to Section 302(g) of the Revenue Act. Chase National Bank v. United States, 2 Cir., 116 F.2d 625; Broderick v. Keefe, 1 Cir., 112 F.2d 293; Bailey v. United States, D.C., 31 F.Supp. 778; Commissioner Internal Revenue v. Washer, 6 Cir., 127 F.2d 446.

Under the Helvering case and the cases above cited, the test of taxability appears to be whether the transfer of the interests of the decedent in the proceeds of the policy was complete and irrevocable when the policy was brought into existence by his act, or whether full ownership and control by the beneficiary must await the death of the decedent.

The answer as to the three policies under consideration is obvious.

In the Union Central policies the beneficiaries could not transfer nor encumber the benefits thereof.

In the Metropolitan policy the beneficiary alone could not borrow thereon, obtain the cash value thereof; neither could she take advantage of the privilege of obtaining a paid-up policy.

The acts and interests of the decedent were an effective bar to these rights, which are incident to the complete ownership. If the beneficiary did not possess all of the incidents of complete ownership and control, it is obvious that they were owned or

retained in part by the deceased, and his death was necessary to transfer them to the beneficiary.

In both the Union Central and Metropolitan policies the beneficiaries were never certain that they or their estates would become the complete owners of the benefits thereof, because of the contingencies of their prior deaths, which would vest all incidents of ownership in the deceased or in his estate.

The theory of the possibility of a reverter, as set forth in Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160, is no longer applicable.

"But since the decision in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, it is unnecessary to rely on the testamentary character of the transaction for it seems plain that when the death of the insured terminates all rights of his estate to receive payment under the policy and fixes them unalterably in the beneficiary, under the provisions of Section 302(g) the proceeds must be added to the estate of the decedent for purposes of taxation." Chase National Bank v. United States, supra, 116 F.2d 625, 627.

The Metropolitan policy dated October 10, 1902, shows upon its face that the decedent possessed incidents of ownership therein, which requires the inclusion of the proceeds in the gross estate of the decedent. The provision permitting the payment by the company of the proceeds of the policy to certain individuals contemplates the right of the insured to designate a beneficiary, and such right would imply the right to change the beneficiary or designate successive beneficiaries. The decedent also had the unrestricted right to obtain a paid-up term policy, payable to his estate. These are incidents of ownership within the rules laid down in Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388.

"Where no express promise is made to pay any designated person, the administrator is the party to sue and may compel payment." Howell v. John Hancock Mut. Life Ins. Co., 286 N.Y. 179, at page 185, 36 N.E.2d 102, 104.

■ The plaintiffs urge that a tax based upon the proceeds of the insurance policies taken out prior to the effective dates of the Revenue Act is unconstitutional. There is no merit in this contention. The tax is upon the transfer of decedent's interest existing at the time of death. Chase National Bank v. United States, supra, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758; Commissioner of Internal Revenue v. Clise, 9 Cir., 122 F.2d 998.

■ The plaintiff also claims that in the case of the Union Central policies which are payable in installments according to the option elected by the insured, the full proceeds of the policies should not be taxed as the possession of same is withheld temporarily from the beneficiary. The death of the insured effected the complete transfer of the proceeds of the policies to the beneficiaries. They are the complete owners thereof. The time when they may obtain possession thereof is circumscribed by the terms of the agreement attached to the policies, but their ownership is no less complete. The value of the transferred property at the time of death is the measure of the tax. Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368; Commissioner of Internal Revenue v. Washer, 6 Cir., 127 F.2d 446; Igleheart v. Commissioner of Internal Revenue, 5 Cir., 77 F.2d 704.

The complaint is dismissed.

### On Reargument

This case was originally submitted upon the theory that the decision, in so far as the two Union Central life insurance policies is concerned, involved only the question as to whether or not the designation by the insured of his estate as a contingent beneficiary required that the proceeds of the policies be included in the taxable estate of the insured. The Court was impressed that to decide the controversy upon the basis above mentioned would be to ignore the uncontested facts appearing upon the face of the policies; to-wit, that after the issuance of the two policies the contingent beneficiary therein was changed and a settlement option elected by an agreement signed by the insured and accepted by the insurer almost four months after the issuance of the policies. The conclusion was reached that the insured retained indicia of ownership in each of the policies which required that they should be included in his taxable estate.

Reargument was granted upon the application of the plaintiff, and a supplemental statement of facts was filed with the

Court, which admit in evidence copies of four certain letters referring to the two policies in question which passed between the general manager of the insurance company at New York and Mr. Handy of the correspondence division of the home office of the insurance company at Cincinnati, Ohio.

Plaintiff claims that this additional evidence shows that each of the policies as originally written were not in accordance with the wish of the applicant; that the language of the agreement attached to each policy should have been contained therein as originally written, and that it was the intention of the parties that same be considered as a part of the application for each policy; thereby eliminating from this case the actions of the parties relative to the agreement, which the Court previously held to be a recognition of at least an indicia of ownership in said policies by the insured.

The defendant urges that the language of the four letters warrants no such conclusion.

■ The policies can not be reformed. The case must, therefore, be decided upon the evidence received and the interpretation of any ambiguity existing in the policies may be aided by the letters in evidence.

The language of the application attached to each policy and the language of the policy itself indicate that the insurance company intended to issue its policy in the first instance payable in a lump sum to a stated beneficiary upon either the endowment date or upon the receipt of due proof of death of the insured. All of the papers making up the application and the language of the policy itself indicate such intention.

It is apparent by the language of Paragraph 34 of the policy that if any of the settlement options contained in Paragraphs 35, 36 and 37 are to be made available, the owner of the policy may make such election by written notice, for which purpose a form will be furnished. This is a clear indication that the insurance company did not intend to make any of such options available until after the actual issuance of the policy.

This interpretation is further borne out by the language of the agreement itself, and confirmation thereof is found in the letter of August 18, 1924, wherein it is stated in substance that the writing agent of the company realized that the insurance company would not issue a policy containing the language necessary to cover "the trust fund plan", and he actually intended to have settlement option papers prepared covering such plan after the policy was issued and accepted. The writing agent apparently knew that in order to express the full intention of the insured it would be necessary to have additional agreements relating to the settlement option prepared, signed by the insured, and accepted by the company, which could only be accomplished legally if the right to change the beneficiary had been reserved. Such reservation would require that the proceeds of the policies be included in the taxable estate of the insured.

Plaintiff claims that the language of the letters dated August 18 and August 22, 1924, indicates that the agreements should be and are to be considered as part of the application. Even if they be so considered, the fact that they were not accepted and did not become part of the contracts until September 8, 1924, can not be overlooked.

Paragraph 27 of each policy contemplates that the policies when issued, together with copy of the application attached thereto, shall constitute the whole contract. None of its terms shall be modified unless in accordance with the provisions of Paragraph 33.

The recognition of plaintiff's claim would amount to a reformation of the insurance contracts without the necessary parties being before the Court or the revision of the contracts by judicial construction. The erroneous form of the application may have been the fault of the writing agent. He knew the wishes of the insured and he chose the procedure to be followed to give effect thereto; he intended to have insurance contracts prepared and delivered, and further intended to amend them by making substantial changes therein. This is just what he accomplished, and the insured recognized the contracts as amended as expressing his intention. He must have had knowledge of the procedure used, as he was a party to it. His estate can not escape the legal effect thereof.

When the policies were issued and delivered, the insured had the option of accepting or rejecting same in their entirety. He apparently accepted them, retaining them in their original form for over two months, and then succeeded in engrafting upon them the agreements accepted by

the insurance company on September 8, 1924. The procedure may have involved poor workmanship, but the recognition of its validity by the insured, the beneficiary and the insurance company is binding upon the estate of the insured in this litigation.

The decision previously made by the Court on July 31, 1943 stands and the complaint is dismissed.