## COMMISSIONER OF INTERNAL REVENUE v. NATHAN'S ESTATE.

No. 9228.

Circuit Court of Appeals, Seventh Circuit.

Feb. 11, 1947.

Sewall Key, J. Louis Monarch and L. W. Post, Asst. Attys. Gen., and J. P. Wenchel and John T. Rogers, Bureau of Int. Rev., both of Washington, D. C., for petitioner.

Myron E. Wisch, of Chicago, Ill., for respondent.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

This appeal involves the Federal estate taxes of the deceased, Charles Nathan. The controversy arises out of a trust created in 1941 by him. He died in April, 1943.

Petitioner argues that the funds in said trust should be included in decedent's gross estate for the purpose of Federal estate tax, subject only to the deduction of the value of a sister's life estate.

Respondent contends, and the Tax Court accepted her contention, that the value of the trust should not be included in the decedent's gross estate in view of the facts disclosed in this case.

As the applicability of Section 811(c) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811(c), and its construction, depend upon the terms of the trust which the decedent created, we quote from said agreement:

"This Trust Agreement, made this 23rd day of December, A. D., 1941, by and between Charles Nathan * * * hereinafter called the Donor * * * and * * * hereinafter called the Trustees, Witnesseth:

"Whereas the donor has assigned * * * to the trustees the property described in the schedule hereto attached * * *

"Now, Therefore * * * it is hereby agreed that the trustees shall hold and administer the said property * * * in trust for the uses and purposes and upon

the terms and conditions hereinafter set forth.

* * * * * *

"2. The entire net income from the trust estate, commencing at the date hereof, shall be paid to Rose Straus, the sister of the donor, for and during her natural life for her sole use and benefit, in installments as hereinabove stated. In the event, however, of the said Rose Straus predeceasing the said donor, Charles Nathan, then and in such event the net income shall be paid over by the trustees to the said donor, Charles Nathan, for and during his natural life for his sole use and benefit, in installments as hereinabove stated."

It must be conceded that Section 811(c) of the Internal Revenue Act governs. Sharp is the controversy over the Regulation (105) promulgated by the Commissioner in 1937.

Section 811(c) reads:

"(c) Transfers in contemplation of, or taking effect at death. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property * * *"
shall be included in the gross estate of the decedent.

Treasury Regulation 80 (approved October 26, 1937) reads as follows:

"(a) Transfers included.—The statutory phrase, 'a transfer * * * intended to take effect in possession or enjoyment at or after the death,' includes a transfer, whether in trust or otherwise, made subject to the reservation or retention by the decedent of the use, or the possession, or the rents or other income or enjoyment of the transferred property, or any part thereof, for his life, or for a period not ascertainable without reference to his death, or for such a period as to evidence his intention

that it should extend at least for the duration of his life; including also the reservation or retention of the use, possession, rents, or other income the actual enjoyment of which, by the decedent, was to be postponed until the termination of a transferred precedent interest or estate."

The U. S. Tax Court, with three judges dissenting, held for the respondent. In reaching its conclusion the majority relied largely, if not entirely, upon a previous decision by it rendered in the case of Estate of Charles Curie v. Commissioner, 4 T.C. 1175 (1945).

We think the Curie case is distinguishable in its facts from the instant case. The Regulation was not the same when Curie died as it was at the time of Nathan's death. In the Curie case the transfer which the Commissioner sought to tax was made in 1935. Curie died in 1936. The old Regulation which governed the Court in the Curie case excluded funds where the transferor's contingent right was eliminated by his death prior to that of the first life tenant. The Treasury Department in 1934 made a ruling (E.T. 5, XIII—2 Cum.Bull. 369) which provided that if the transferor was at the time of his death in the actual enjoyment of the income of the trust the transfer should be subject to taxation and where the transferor's contingent right to the trust income was obliterated by his death prior to that of the first life tenant the transfer was not taxable.

It is true Nathan's death occurred prior to that of the first life tenant. However, the Treasury Regulation 105 had been in force for six years prior to Nathan's death and it expressly changed that part of the 1934 ruling which dealt with the transferor's contingent right to the trust income in case of his death prior to that of the first life tenant.

This difference not only clearly distinguishes the factual background of the Curie case from this case but also makes it necessary for us to consider respondent's challenge of the authority of the Treasury Department to promulgate its Regulation 105 in view of the statute, Sec. 811(c).

Is Treasury Regulation 105 within the scope of the language of Section 811(c)?

Evidently its validity depends upon the construction we give to one sentence in Section 811(c) "To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, *under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death* (1) the possession or enjoyment of, or the right to the income from, the property \* \* \*."

We think it clear that said Regulation can not be upheld unless we give to the statute a breadth which requires us to say the contingent estate retained by Nathan was for his life or for a period not ascertainable without reference to his death— *or was for a period which does not in fact end before his death.*

It would be outside the power of the Commissioner to extend the liability of this transfer for taxation beyond that designated in the statute. We say this notwithstanding the Regulation was promulgated in 1937 and numerous sessions of Congress have come and gone without its approving, revising or disapproving the Regulation.

We find ourselves then unable to pass upon the validity of the Regulation without construing the above-quoted language of the statute.

The doubt, if any exists in this case, is over the question, was the property which was transferred and in which deceased retained a contingent life interest, terminable by his death or by that of his sister? Stated differently, was the period during which his contingent estate therein existed ascertainable without reference to his death or did the period of the contingent estate which decedent retained in the trust he created have a possible ending before his death?

Notwithstanding some doubt (in view of the discussion in the Curie case) we hold the language of the statute must be so construed as to impose an estate tax on the property covered by this trust less the value of the life estate of the sister. Our decision is not predicated on the Regulation. It is made necessary by the statute which, without the Regulation, imposes the tax.

The Commissioner could not have found or held otherwise. The transfer in which the deceased retained a contingent estate was held by him for a period which did not in fact end before his death. It was his death, not his sister's death, which terminated his contingent interest.

The trend of legislation imposing taxes on trusts created to take effect upon the settlor's death, the income in the meantime to run to the settlor, directly or even contingently, has been in one direction.

The effect of the changes in the Federal estate tax statute and which ultimately found expression in Section 811(c) has been to enlarge the taxable estate of one who in his lifetime transferred all or part of his property in trust, the transfer to take effect on his death. The decisions of the courts have given effect to the evident purpose of Congress. (Commissioner v. Spiegel's Estate, 7 Cir., 159 F.2d 257; Commissioner v. Field, 324 U.S. 113, 116, 65 S.Ct. 511, 89 L.Ed. 786, 159 A.L.R. 230; Fidelity Co. v. Rothensies, 324 U.S. 108, 111, 65 S.Ct. 508, 89 L.Ed. 783, 159 A.L.R. 227; Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368.)

The inclusion of that part of the statute here under consideration is traceable to a start by Congress, in the Revenue Act of 1926. In other words, to Section 302(c) of the Act of 1924 there was enacted an amendment in 1926, also found in Section 302(c). This section was amended in 1932 and became Section 811(c).

The effect of these amendments was to enlarge the property upon which the estate tax was assessed. Its heading indicated its purpose. In other words, it dealt with "transfers in contemplation of, or *taking effect at death."* It included transfers which took effect at the death of a settlor of a trust, and evidenced the purpose of Congress to include all transfers which may be described broadly as testamentary in character.

The factual difference between the instant case and the usual trust agreement which may be called testamentary has not been

ignored. The decedent here retained only a contingent estate which became effective in case he survived his sister. Notwithstanding this rather important fact so far as enjoyment is concerned, it did not take the transfer out of the reach of the language of Section 811(c) which controls our decision. We cannot lessen the effect or the meaning of the words because the settlor's interest was less certain or the enjoyment of the estate reserved more remote. We feel we must give the words used their fair, rightful meaning and we can not make them depend on the size or nature of the settlor's reservation appearing in his transfer. The vital test of said reservation in settlor's favor necessitates an answer to the query—was the transfer one which was for a period not ascertainable without reference to his death?

The decision of the Tax Court is reversed with directions to enter an order in accordance with the views here expressed.