MARKS et al. v. HIGGINS.
No. 240, Docket 22975.

United States Court of Appeals, Second Circuit.

Argued May 7, 1954.
Decided June 8, 1954.

Tanzer & Mullaney, New York City (Samuel B. Seidel and Laurence A. Tanzer, New York City, of counsel), for appellants.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of New York, New York City (Arthur S. Ecker, New York City, of counsel); for appellee.

Before CLARK, FRANK and MEDINA, Circuit Judges.

1. Section 302(c) then provided that the gross estate should include property, "To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death * * *."

2. Section 803(a)—carried into present § 811(c) (1) (B), 26 U.S.C.A.—reads as follows: "To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at

FRANK, Circuit Judge.

May v. Heiner, 1930, 281 U.S. 238, 50 S.Ct. 286, 287, 74 L.Ed. 826, dealt with a trust reserving a contingent life estate to the settlor, Mrs. May, following a life estate to her husband. The Court held that § 302(c) of the 1926 Act [1] did not cover the settlor's life interest. In its opinion, the Court said: "The record fails clearly to disclose whether or no Mrs. May survived her husband. Apparently she did not. But this is not of special importance, since the refund should have been allowed in either event." If, then, § 302(c) had remained without amendment, May v. Heiner would have required a refund in the instant case.

However, the Joint Resolution of March 3, 1931, 46 Stat. 1516—enacted to amend § 302(c) at the urgent prompting of the Treasury which was alarmed by the serious consequences to the fisc of the May v. Heiner interpretation—included the added phrase or "a transfer under which the transferor * * * for * * . * any period not ending before his death * * *." In 1932, Congress amended § 302(c) by § 803(a) of the 1932 Act [2] which included a phrase—substantially like that added in the Joint Resolution—"for any period which does not in fact end before his death", and also a second new phrase, "for any period not ascertainable without reference to his death".

If we look solely to this statutory language, it is entirely clear that—without any assistance from or need for any in-

or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *"

terpretive Regulation—it covers a contingent life interest like that in the trust before us here. So the Seventh Circuit held in Commissioner of Internal Revenue v. Nathan's Estate, 7 Cir., 159 F.2d 546.

Appellants, however, point to the Committee Reports on the 1932 amendment.[3] These Reports state that the first pharse, "or for any period which does not in fact end before his death", is but "clarifying"; and they give as an illustrative example of its coverage a case where the settlor "is to have the income from and after the death of another person until his own death and such other person predeceases him." If those Reports control the interpretation of the statute, then this first phrase does not apply to the sort of contingent life estate, of a settlor who predeceases the preceding life tenant, considered in May v. Heiner, and we have the astonishing result that the Joint Resolution, which had added virtually the same phrase, failed of its intended purpose.[4]

We must, then, construe an amendatory statute the text of which is clear and unambiguous—and undeniably reasonable if one accepts its literal meaning [5]—while its context—its "legislative history"—alone is ambiguous: (1) According to the older notion, the background or context which legitimately may be considered in construing legislation consists primarily of the circumstances surrounding the appeal to the legislature and the "mischief" or "evil" which the legislation aimed to remedy.[6] Here the literal text is entirely in accord with such circumstances and with the aim of the statute, i. e., the undoing of the May v. Heiner interpretation. (2) More recently, it has become legitimate, in the federal courts, also to consider more or less what Continental lawyers call "travaux preparatoires,"[7] including Committee Reports. But in respect of the statute we are now considering, (2) is at odds with (1). We think it has never been sound doctrine that a court may look at the text of an

---

**3.** See 1939–1 Cum.Bull. (Pt. 2) 490, 532. So far as pertinent, they read as follows: "The purpose of this amendment to section 302(c) of the Revenue Act of 1926 is to clarify in certain respects the amendments made to that section by the joint resolution of March 3, 1931, which were adopted to render taxable a transfer under which the decedent reserved the income for his life. The joint resolution was designed to avoid the effect of decisions of the Supreme Court holding such a transfer not taxable if irrevocable and not made in contemplation of death. Certain new matter has also been added, which is without retroactive effect.

"The changes are: (1) The insertion of the words 'or for any period not ascertainable without reference to his death,' is to reach, for example, a transfer where decedent reserved to himself semiannual payments of the income of a trust which he had established, but with the provision that no part of the trust income between the last semiannual payment to him and his death should be paid to him or his estate, or where he reserves the income, not necessarily for the remainder of his life, but for a period in the ascertainment of which the date of his death was a necessary element. (2) The insertion of the words 'or for any

period which does not in fact end before his death,' which is to reach, for example, a transfer where decedent, 70 years old, reserves the income for an extended term of years and dies during the term, or where he is to have the income from and after the death of another person until his own death, and such other person predeceases him. This is a clarifying change and does not represent new matter."

**4.** See Bittker, The Church and Siegel Cases, 58 Yale L.J. (1949) 826, 867–869.

**5.** We stress the reasonableness of the literal meaning, for the situation might well be different if that meaning yielded unreasonable consequences. See, e. g., Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226; Cabell v. Markham, 2 Cir., 148 F.2d 737, affirmed sub nom. Markham v. Cabell, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165.

**6.** See, e. g., Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226.

**7.** See, e. g., Allen, Law In The Making (5th ed. 1951) 490–491; Plucknett, Concise History of the Common Law (4th Ed.) 317ff.; Guttridge, Comparative Interpretation, 10 Tulane L.Rev. (1933) 1, 9–10, 20.

Act only when the legislative history is ambiguous. But, even under such a doctrine, in the case of the 1932 amendatory Act, we think we would be obliged to stick to the text without regard to the context. Consequently, although we confess that our conclusion is not free from all possible doubts, we think that, because of the astonishing result of resorting to the Committee Reports, we should ignore those Reports to the extent that they war with the plain and reasonable meaning of the statutory language.

There is also the second statutory phrase, "for any period not ascertainable without reference to his death," which, glove-like, fits the facts here. This second phrase the Committee Reports apparently considered a change of substance.[8] To be sure, the Reports, in giving examples of the coverage of this second phrase, did not mention a case like that at bar where the settlor predeceases the holder of the preceding life interest. As, however, Congress deemed the addition of this second phrase a sub-stantial change, it may well be that it was intended to eradicate any part of the May v. Heiner interpretation which the Joint Resolution of 1931 and the first phrase in the 1932 amendment may conceivably have left intact.

Accordingly, we agree with Commissioner of Internal Revenue v. Nathan's Estate, 7 Cir., 159 F.2d 546.[9] We find further support in the discussion of the "rationale" of May v. Heiner in the subsequent case of Commissioner of Internal Revenue v. Estate of Church, 335 U. S. 632, 645–646, 69 S.Ct. 322, 337, 93 L. Ed. 288.[10] It is difficult to believe that Congress, in the 1932 statute, did not thoroughly eliminate that much-criticized rationale.[11]

2. In the Nathan's Estate case, the trust was created in 1941, after the issuance, in 1937[12] and 1938[13] of Regulations which unmistakably interpreted the statute to cover a contingent life estate like that of the settlor's here, even if the settlor dies before the preceding life interest. However, here Marks, the settlor, created the trust on

---

8. The Joint Resolution of 1931 had contained no similarly worded phrase.

9. Appellants argue that the Seventh Circuit, in Nathan's Estate, did not consider the Committee Reports. We do not agree. For that decision was on an appeal from a decision of the Tax Court, 6 T.C. 604, which discussed Estate of Currie, 4 T.C. 1175; and, in the Currie case, the Tax Court quoted in full the pertinent part of those Reports. Moreover, the Seventh Circuit opinion in Nathan's Estate cites and discusses the Tax Court's opinion in the Currie case.

10. Although the Church case dealt with the phrase "intended to take effect in possession or enjoyment at or after his death," we think the reasoning of the opinion serves to dispose of the elaborate argument of appellants in the instant case that the settlor, Marks, had not "retained" anything. See especially 335 U.S. at pages 645–646, 69 S.Ct. 322.

11. The Conference Report on the Technical Changes Act of 1949, 63 Stat. 891, 26 U.S.C.A. Int.Rev.Acts, states " * * * the expression 'not ascertainable without reference to his death' as used in § 811 (c) (1) (B) * * * includes the right to receive the income from transferred property after the death of another person who in fact survived the transferor. * * *" See Report of Conference Committee on H.R. 5628, p. 5, 81st Cong. 1st Sess. The government suggests that this statement "specifically affirms" the rule of Nathan's Estate. Congressional views as to the meaning and intent of earlier legislation merit consideration according to circumstances, equally with other informed commentary commonly accepted as judicial aids in statutory interpretation, and may at times be highly persuasive. See Galvan v. Press, 74 S. Ct. 737; United States v. Stafoff, 260 U.S. 477, 480, 43 S.Ct. 197, 67 L.Ed. 358; First National Bank in St. Louis v. Missouri, 263 U.S. 640, 658, 44 S.Ct. 213, 68 L.Ed. 486; Fire Companies Buildings Corp. v. Commissioner, 2 Cir., 54 F.2d 488, 489; American Exchange Securities Corp. v. Helvering, 2 Cir., 74 F.2d 213, 214. But we think the 1949 Conference Report is not of much value or importance in the present context.

12. Reg. 80, Art. 18(a) (1937). See Cum. Bull. 1937–1, p. 285.

13. Reg. 105, § 81.18. See Cum.Bull. 1938–2, p. 356.

December 21, 1935, when there was still outstanding an interpretative ruling, issued in 1934, which construed the 1932 statute as excluding such a contingent life estate.[14] Appellants contend that the settlor reasonably relied upon that 1934 interpretative ruling when he created the trust, and that therefore it would be unconstitutional to apply, retroactively, to this trust the interpretative Regulations promulgated subsequently in 1937 and 1938.

The record is barren of evidence that the settlor actually did rely on the 1934 ruling. Even if we were to presume reliance, and even if we assumed that, where there has been reasonable reliance on a valid interpretative ruling, a retroactive change in the administrative interpretation violates due process, still we think there would be these sufficient answers to appellants' contention:

(a) The Seventh Circuit in Nathan's Estate held, we think correctly, that the statute is so clear that it needs no administrative interpretation, that such an interpretation is supererogatory.[15] It follows that the 1934 ruling lacked validity, since it contradicted the statute, and that therefore the settlor's reliance is immaterial.

(b) The facts here show an absence of reasonable reliance by the settlor on the 1934 ruling, even if it be considered valid. For, as already noted, previous to his death, which occurred November 22, 1939, two Regulations—one in 1937 and another in 1938—superseded the 1934 ruling, and specifically interpreted the statute as covering a trust containing a contingent life estate of the kind he reserved. The settlor thus had ample warning, and had ample time, to divest himself of his contingent life interest.[16] True, the trust seems to have been irrevocable. But, without revoking it, he could have released his interest. In the alternative, he could have given it to someone else; for, under the New York "law," applicable to this trust, a future contingent interest in personal or real property is alienable. National Park Bank v. Billings, 144 App.Div. 536, 129 N.Y.S. 846, affirmed 203 N.Y. 556, 96 N.E. 1122.

Affirmed.

---

14. E.T. 5, XIII-2 Cum.Bull. 369 (1934).

15. See 60 Harv.L.Rev. (1947) 989.

16. Cf. Commissioner of Internal Revenue v. Chase National Bank, 2 Cir., 82 F.2d 157, 158; Thorp's Estate v. Commissioner, 3 Cir., 164 F.2d 966, 969.