**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**ESTATE of Lena R. ARENTS, United States Trust Company of New York and George Arents, Executors, Respondents.**

**No. 20, Docket 26740.**

United States Court of Appeals Second Circuit.

Argued Nov. 17, 1961.

Decided Jan. 5, 1962.

Carolyn R. Just, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on the brief), for petitioner.

Leslie D. Dawson, New York City (Ben R. Clark, New York City, on the brief), for respondent.

Before MOORE, SMITH and HAYS, Circuit Judges.

HAYS, Circuit Judge.

The Commissioner petitions for review of a decision of the Tax Court holding that certain property transferred to a trust is not includible in the gross estate of the decedent-grantor under § 811(c)(1)(B) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811(c)(1)(B).

On June 4, 1932, the decedent, Lena R. Arents, established an irrevocable trust and transferred thereto certain corporate securities and several insurance policies on the life of her husband. The trust instrument provided that the income from the securities was first to be applied to payment of the premiums on the insurance policies. All income in excess of that required for this purpose was to be paid to the decedent-grantor. If Mrs. Arents survived her husband the proceeds of the insurance policies were to become

part of the corpus of the trust and Mrs. Arents was to receive the income produced by these proceeds and by *all* the securities for the remainder of her life. If grantor's husband survived his wife, he was to receive for the remainder of his life the income from the securities which was not required to cover the insurance premiums. When the surviving spouse died, the corpus of the trust was to be distributed to the Arents' son, if he was then living, or if he was dead then to his distributees as defined by the New York statutes on distribution and descent.

Lena Arents died on March 11, 1954, survived by her husband. During the life of the donor 28.93% of the net income from the securities subject to the trust was used to pay the insurance premiums. In the Tax Court proceedings, respondents conceded that the value of these securities in excess of the amount required to pay the premiums on the life insurance policies was properly includible in decedent's taxable estate, since, as to these securities, she had reserved an immediate life estate. Thus, this review involves only the insurance policies and 28.93% of the securities, as to which decedent reserved a life estate only after the death of her husband.

Whether the property in issue is includible in the decedent's taxable estate is governed by § 811(c) (1) (B), as amended, of the Internal Revenue Code of 1939.[1] That section provides that property transferred after March 3, 1931 and before June 7, 1932 shall be included in decedent's taxable estate only if it would be so by reason of the Joint Resolution of March 3, 1931 (46 Stat. 1516).

That Resolution reads as follows:

"Resolved * * * that the first sentence of subdivision (c) of section 302 of the Revenue Act of 1926 is amended to read as follows:

[Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.]

" '(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income

---

1. "Sec. 811. Gross Estate.

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\*   \*   \*   \*   \*

"(c) [as amended by Sec. 7(a) of the Act of October 25, 1949 (Technical Changes Act of 1949), c. 720, 63 Stat. 891, and by Sec. 207 of the Technical Changes Act of 1953, c. 512, 67 Stat. 615] *Transfers in Contemplation of, or Taking Effect at, Death.—*

"(1) *General rule.—*To the extent of any interest therein óf which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—\* \* \*

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; \* \* \*

\*   \*   \*   \*   \*

"Subparagraph (B) shall not apply to a transfer made before March 4, 1931; nor shall subparagraph (B) apply to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516)."

therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth.' " [2]

Absent any gloss on the statute, the language "a transfer under which the transferor has retained for \* \* \* any period not ending before his death \* \* the income from, the property" appears clearly to render taxable the insurance policies and the securities here in issue. The period for which income was retained in the trust instrument is the period after Mr. Arents' death and before the grantor's. It is irrelevant that the grantor in fact died before her husband, since, under the statute, the tax status of the transferred property is determined by the character of the transfer, and not by subsequent events.

The legislative history of the Joint Resolution supports this interpretation. In April 1930, the Supreme Court decided May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826. There, decedent had set up an irrevocable trust, reserving a life estate after the death of an intermediate life tenant. The Court held that the value of the corpus of the trust was not taxable as part of decedent's gross estate. The Court noted that the record failed to disclose whether decedent had survived the intermediate life tenant, but commented that "this is not of special importance, since the refund should have been allowed in either event." 281 U.S. at 243, 50 S. Ct. at 287. On March 2, 1931, in three *per curiam* decisions,[3] the Supreme Court held, on the authority of May v. Heiner, that the corpus of a trust is not includible in the grantor's gross estate even though the grantor reserved an immediate life estate in the property or its equivalent. The statute here under construction was passed the next day.

The Resolution was drafted by the Treasury Department. It was transmitted to the House of Representatives with

a letter from the Acting Secretary of the Treasury in which he described the purpose of the bill. That letter, in pertinent part, is as follows:

"Washington, March 3, 1931

"My Dear Mr. Speaker: The Supreme Court of the United States has recently had before it the following three cases:

"1. A places property in trust by a deed which provides that the income shall be paid to B for his life, then to A for her life, and then that the trust shall terminate upon the death of A, at which time the property shall be distributed among the children of A. (May v. Heiner.)

"2. A places property in trust by a deed which provides that the income therefrom shall be paid to A for her life and upon her death that the trust shall terminate and the property shall be distributed among her children. (Burnet v. Northern Trust Co., executor of Van Schaick.)

"3. A places property in trust by a deed which provides that A shall have the right to call upon the income therefrom to supplement her income from other property *if it falls below a given sum*; reserves the right to dispose of the remainder of the income by ordering its payment to others and which further provides that the trust shall terminate upon the death of the last of her three children, at which time, if A is surviving, the property will be paid over to her, and, if not, will then be paid to the issue of her children. (McCormick v. Burnet.)

"The Supreme Court by decisions rendered yesterday afternoon in the Van Schaick and McCormick cases, following *its decision in the case of May v. Heiner*, held that the value of the property comprising each of the foregoing three trusts, at the date of A's death, was not to be included in the decedent's gross estate as a transfer 'intended to take effect in pos-

---

**2.** 46 Stat. 1516 (1931).

**3.** Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412 (1931); Morsman v. Burnet, 283 U.S. 783, 51

S.Ct. 343, 75 L.Ed. 1412 (1931); McCormick v. Burnet, 283 U.S. 784, 51 S. Ct. 343, 75 L.Ed. 1413 (1931).

session or enjoyment at or after his death.'

\*  \*  \*  \*  \*  \*

"It is believed desirable, in view of the character of these transfers and in order to prevent tax evasion, that they be included in the statute. The Treasury has, therefore, drafted a proposed joint resolution, which is enclosed, amending the statute so as to include such transfers.

\*  \*  \*  \*  \*  \*

"Very truly yours,
Ogden L. Mills,
Acting Secretary of the Treasury "[4]

The Joint Resolution was unanimously passed that day by both houses of Congress after brief discussion[5] and was signed by the President the same day. 46 Stat. 1516.

It is to be particularly noted that the Acting Secretary's letter, in referring to May v. Heiner, makes no mention of any question as to the survival of the intermediate life tenant, thus affording powerful support for the view that the Resolution was intended to reach all trusts in which the grantor reserved a secondary life estate. It is conceded that the Resolution reaches secondary life estates when the grantor survives the intermediate life tenant. The language of the Resolution provides no basis for any distinction between situations in which the intermediate life tenant survives the grantor and those in which he does not. The Supreme Court in May v. Heiner, the Acting Secretary and the participants in the brief Congressional debate all failed to draw any such distinction. There is no reason for this court to read such a distinction into the statute.

Thus, if we looked only to the history of the 1931 Resolution we would be confirmed in our view, based on the language of the Resolution itself, that the enactment encompasses the interest here in question. But we are urged by the Respondents to look to the subsequent development of the law concerning the computation of gross taxable estate.

It may be freely conceded that the legislative history of § 803 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, indicates that Congress, or at least that segment of Congress which prepared this section, was under the impression that the 1931 Joint Resolution covered only those trust assets in which a secondary life estate was reserved when the grantor survived the intermediate life tenant, and not those in which the grantor predeceased the intermediate life tenant.[6] As we have noted, neither the language nor the legislative history of the Resolution supports this construction—a construction which focuses attention on the life span of the beneficiaries rather than on the terms of the trust instrument. However, it is clear that Congress in 1932 intended to expand the coverage of the existing law. It would be paradoxical indeed if, because Congress proceeded on a partly mistaken notion as to the scope of that law, the broadening legislation should be interpreted as having had the effect of narrowing the law retroactively.[7]

In 1949, in Commissioner of Internal Revenue v. Church's Estate, 335 U.S. 632, 69 S.Ct. 322, 337, 93 L.Ed. 288, the Supreme Court overruled May v. Heiner and the three contemporary *per curiam* decisions, and held that the reservation of a life estate in a pre-1931 trust subjected the corpus to estate tax. § 7(a) of the Technical Changes Act of 1949[8] was passed to overrule the Church decision and restore the tax immunity established by May for pre-1931 trusts.[9] At the

---

4. 74 Cong.Rec. 7198 (1931).

5. 74 Cong.Rec. 7198–99, 7078–7079.

6. See Report of Committee on Ways and Means on § 803 of Revenue Act of 1932, 1939–1 Cum.Bull. (part 2) 490; Report of Senate Finance Committee, id. at 532.

7. This is not a situation in which, in order to influence judicial interpretation of an

existing statute, Congress officially records the "legislative intent" of the earlier Congress. See 67 Stat. 226 (1953), 28 U.S.C. § 171 (1958).

8. Act of October 25, 1949, c. 720, 63 Stat. 891.

9. See 95 Cong.Rec. 12990 (1949) (remarks. of Senator George).

same time, Congress eliminated any impact Church might have on trusts established between March 3, 1931 and June 7, 1932 by providing that property transferred to trusts within that period should be included in the grantor's gross taxable estate only if it would be so by virtue of the 1931 Resolution.

There is no question that in 1949 Congress had the power to narrow the tax law applicable to trusts established after March 3, 1931 and before June 7, 1932.[10] If Congress passed the 1949 statute under the impression that the 1931 Joint Resolution did not encompass the interests now under discussion, we would be confronted with the serious question whether, by providing that the 1931 Resolution shall govern trusts established within the period prior to the 1932 enactment, it had not in fact narrowed the law pre-existing Church. Phrased differently the question would be whether the rule Congress intended to apply would supersede the plain meaning and legislative history of an earlier enactment that it designated as expressing that intent.

For this Court to consider so altering the meaning of the 1931 Resolution, there would have to be very convincing evidence of Congressional intent at variance with the natural import of the 1931 Resolution. No such evidence exists.

Senator George, Chairman of the Senate Committee on Finance, in his explanation of the bill stated that:

"* * * The Congress in 1931 enacted a joint resolution to overcome the effect of May against Heiner * * *" 95 Cong.Rec. 12990 (1949).

It is true that the "Statement of the Managers on the Part of the House" after Conference described a secondary life estate that was not realized because the grantor predeceased the intermediate life tenant as an interest covered by the language "not ascertainable without reference to his death" (1949–2 Cum.Bull. 300), language that was added in 1932. This statement, however, falls far short of evidencing Congressional understanding that such an interest is not also covered by the language "for * * * any period not ending before his death." [11] In Marks v. Higgins, 213 F.2d 884 (2d Cir. 1954), this Court held that both clauses apply to secondary life interests when the grantor predeceased the intermediate life tenant. The Court in the strongest terms rejected suggestions that such an interest was not covered by the language relating to a period not ending before death. 213 F.2d at 887–888.

Respondents cite no other statements or reports that would support the conclusion that Congress in 1949 (or in 1953 when the exception clause was substantially reenacted) [12] understood the 1931 Resolution in a narrower sense than that evidenced by its language and its legislative history and that attributed to it in Marks v. Higgins.

We conclude, therefore, that the proper interpretation of the Joint Resolution, supported, as that interpretation is, by the pertinent legislative history, leads to the result in the present case for which the Commissioner contends.

In Hubbard's Estate v. Commissioner, 250 F.2d 492 (5th Cir. 1957), the Court of Appeals for the Fifth Circuit reached a contrary conclusion. The holding in the Hubbard case appears to us to have been rested on a misreading of the language of the Joint Resolution, as well as on unjustified reliance on the 1932, rather than the 1931, legislative history. Unlike the Fifth Circuit we believe that, as this Court said in Marks v. Higgins, the language of the Joint Resolution "is clear and unambiguous—and undeniably rea-

---

10. To the extent that the Church decision was declared inapplicable to the March 3, 1931–June 7, 1932 period, the Technical Changes Act of 1949 certainly had this effect.

11. In the 1932 and subsequent enactments this clause was changed to read "for any period which does not in fact end before his death."

12. § 207 of the Technical Changes Act of 1953, c. 512, 67 Stat. 615.

sonable if one accepts its literal meaning—" and that that language clearly applies to and includes the interests involved in the present case. Moreover, we would put our reliance on the legislative history of the 1931 Resolution itself, and as in Marks v. Higgins, reject the legislative history of the subsequent act, in so far as that history is at "war with the plain and reasonable meaning of the statutory language" and with the history of the earlier enactment.

Reversed.