**ESTATE of J. William BAHEN, Deceased, Kathleen Privett Bahen, Sole Executrix**

v.

**The UNITED STATES.**

No. 144-60.

United States Court of Claims.
July 18, 1962.

Paul F. Mickey, Washington, D. C., for plaintiff. Steptoe & Johnson, Washington, D. C., were on the briefs.

Earl L. Huntington, Washington, D. C., with whom was Louis F. Oberdorfer, Asst. Atty. Gen., for defendant. Edward S. Smith, Lyle M. Turner and Philip R. Miller, Washington, D. C., were on the brief.

DAVIS, Judge.

The estate of a former high-ranking officer of The Chesapeake and Ohio Railway Company claims that sums paid by the C. & O. to his widow on his death in 1955, under benefit plans unilaterally adopted by the railroad in 1952 and 1953, were improperly included in his gross estate for tax purposes. The issue is one of law under the Internal Revenue Code of 1954; the parties have agreed upon a stipulation of facts which we have accepted.[1]

The decedent, J. William Bahen, was born in 1905 and died in 1955. He married the plaintiff, executrix of the estate,

---

1. Initially, the parties entered into a stipulation of facts which appended the full texts of the two plans in question, as well as other documents, without indicating which parts of the documents were considered relevant and material. At the oral argument, the parties undertook, at the request of the court, to attempt to agree upon a supplemental stipulation embodying only the facts and documentary material bearing on the legal issues. Such a stipulation was filed on May 18, 1962. With slight changes, we have embodied it in our findings.

in 1930; they had no children. For almost 37½ years Mr. Bahen worked continuously for the C. & O.; at his death he was the fulltime Assistant to the President. He had not retired nor was he eligible for retirement. He worked regularly and hard and was repeatedly urged by the Medical Director of the Greenbrier Clinic (at White Sulphur Springs, West Virginia), which examined him periodically, to get more rest because of the tension under which he was working. He suffered some abdominal disturbances and electrocardiograms showed some evidence of partial blockage (without appreciable change over the years), but he had no illness that indicated a heart attack and there was also nothing to indicate that he could not perform his duties. While at the Greenbrier Hotel, to attend a meeting on November 11, 1955, Mr. Bahen suffered a heart attack and died within six hours after first reporting his symptoms to the Greenbrier Clinic. The death certificate showed that he died as the result of arteriosclerotic heart disease and coronary thrombosis.

After Mr. Bahen's death, the C. & O. made payments to his widow under two plans which it had earlier established for its employees. The first was the Death Benefit Plan, adopted in January 1952, which provided (see finding 9) that, if a covered employee with more than 10 years' service died while in the company's employ and before becoming eligible for retirement, the C. & O. would pay, "in recognition of the services rendered by him", a sum equal to three months' salary to his widow or (if she died prior to payment) to the guardian of any of his minor children.

The more significant arrangement was the Deferred Compensation Plan adopted by the company in February 1953 for forty of its officers and executives. See finding 6. For a designated officer who was under 60 at that time, like Mr. Bahen, the C. & O. would pay a stated maximum sum ($100,000 in Mr. Bahen's case), at his death either before or after retirement, to his widow and to those of his surviving children under 21 the officer might specify (and in the proportions he designated), in 60 equal monthly installments. These payments were to be made only if a wife or minor child survived the officer and would continue only so long as there was a surviving wife or child under 21. However, if prior to retirement the officer became totally incapacitated, mentally or physically, for further performance of duty, the payments would be made to him in 60 equal monthly installments so long as he survived, any unpaid installment going to his widow or minor children. The president of the company was to notify each officer covered by the Plan of the benefits payable to him and was also "to represent that the Plan is irrevocable, not subject to later withdrawal by this Board [of Directors], and represents a firm commitment on the part of the Company to extend benefits in accordance with the terms and conditions herein set forth" (finding 6). Mr. Bahen was immediately notified of this Deferred Compensation Plan and its irrevocability.

Both of these plans were established by the voluntary unilateral action of the C. & O. The costs were not deducted from other compensation received by Mr. Bahen. Both plans were unfunded and the company did not purchase insurance policies or annuity contracts in connection with them. Neither of the plans was, at the time of the decedent's death, qualified under Section 401 of the Internal Revenue Code of 1954, 26 U.S. C.A. § 401.[2]

Mrs. Bahen received $7,437.50 (three months' salary) under the Death Benefit Plan and 60 monthly payments totaling $100,000 under the Deferred Compensation Plan. These amounts were not included in the estate tax return on Mr. Bahen's estate. On audit, the Commis-

2. Section 401 relates to qualified pension, profit-sharing, and bonus plans meeting specified conditions. Certain special tax treatment is provided for such plans.

sioner of Internal Revenue made an additional assessment on the basis of his determination that the value at the decedent's death of the benefits payable under the two plans was includable in the gross estate. This additional assessment was paid, and a claim for refund was filed on July 28, 1959, and rejected on November 10, 1959.

The Government invokes each of four sections of the Internal Revenue Code of 1954 (Sections 2036(a) (2), 2037, 2038(a) (1), and 2039), 26 U.S.C.A. §§ 2036(a) (2), 2037, 2038(a) (1), 2039 as authority for the inclusion in Mr. Bahen's taxable estate of the value of his employer's payments to Mrs. Bahen under the two plans. We need consider only Section 2039, a new provision added to the estate tax in 1954 which for the first time established specific rules for the coverage of annuities and other survivor benefits. See S.Rept. No. 1622, 83d Cong., 2d Sess., pp. 123, 469; H.Rept. No. 1337, 83d Cong., 2d Sess., p. 90, A314 U.S.Code Cong. and Adm.News 1954, pp. 4457, 5113, 5335.

■ The text of Section 2039(a) states:

"The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or other payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.[3] "

The Treasury has issued Regulations under this provision which plaintiff does not challenge and which we are to take fully into account. Unless they violate the statute they seek to implement, such Treasury Regulations must be accepted in the areas they occupy. Fawcus Machine Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397; Commissioner of Internal Revenue v. Wheeler, 324 U.S. 542, 546–547, 65 S.Ct. 799, 89 L.Ed. 1166; Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 503, 68 S.Ct. 695, 92 L.Ed. 831.

Section 2039 was a development of the earlier provisions of the estate tax which spoke of the decedent's "property" and of "transfers" by the decedent in contemplation of or taking effect at death. See Section 811 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811. The new section does not use that phraseology but frames its operative requirements more directly in terms of particular types of transactions or arrangements involving the decedent. This change is significant. We must pay heed to the precise new form in which Congress cast its net and not become entangled in the older meshes.

■ A. *The Deferred Compensation Plan*: We first consider the application of Section 2039 (and the Regulations) to the C. & O.'s major plan, the Deferred Compensation Plan (of 1953) under which $100,000 was paid to Mrs. Bahen in a five-year span. As we read the section and the Regulations, they demand inclusion in the estate of the proceeds of this Plan. Every requirement is squarely met, not only in literal terms but in harmony with the legislative aim.

1. There is, initially, no doubt that the Plan, though adopted by the company unilaterally and without negotiation with the officers and employees, was a "form of contract or agreement" under the statute. This phrase is defined by Section 20.2039–1(b) (1) (ii) of the Treasury Regulations on Estate Tax to

---

**3.** Subsection (c) of Section 2039 exempts annuities under trusts and plans qualified under Section 401 (see footnote 2, supra).

include "any arrangement, understanding or plan, or any combination of arrangements, understandings, or plans arising by reason of the decedent's employment." A compensation plan unilaterally adopted by the employer, but made irrevocable and communicated to the employee, falls directly within this definition, at least where the employee continues in the company's service after the adoption of the plan.[4]

2. There is likewise no doubt that Mrs. Bahen, the beneficiary, received "an annuity or other payment" under the statute when she was paid the $100,000 in sixty equal installments. The Regulations (Sec. 20.2039–1(b) (1) (ii)) appropriately say that this double term in Section 2039, as used with respect to both the beneficiary and the decedent, "has reference to one or more payments extending over any period of time", and that the payments may "be equal or unequal, conditional or unconditional, periodic or sporadic." See also S.Rept. No. 1622, 83d Cong., 2d Sess., at p. 470; H.Rept. No. 1337, 83d Cong., 2d Sess., at p. A315.[5]

3. The next problem is whether at Mr. Bahen's death there was payable to him or he possessed the right to receive *an annuity or other payment.* The Deferred Compensation Plan provided that, if Mr. Bahen became totally incapacitated for further performance of duty before retirement, the C. & O. would pay him the $100,000 in 60 equal monthly installments. Under both the normal understanding of the statutory words "annuity or other payment" and

the broad definition given them by the Regulations (referred to above), these sums must be characterized as at least an "other payment." Stressing Congress's use of the singular ("payment") and a reference in the Senate Committee report to a lump-sum payment in lieu of an annuity,[6] plaintiff appears to urge that the *only* "payment" to a decedent covered by Section 2039 is a lump sum paid or payable in the place of a strict lifetime annuity (i. e., an annuity paid in the form of a lump sum). But we cannot confine the general language of Section 2039, as interpreted by the Regulations, within the limits of one illustration given by the Committee as a reason for adding the all-inclusive words "other payment" to "annuity".[7] As we point out more in detail below, the history and pattern of Section 2039 fail to indicate that it deals only with true lifetime annuities (in installment form or in a commuted lump sum). The statute covers— as an "other payment", at least—disability compensation benefits of the type involved here.

4. Were these benefit payments—assuming, as we have just decided, that they constituted an "annuity or other payment" within Section 2039—"payable to" Mr. Bahen at his death or did he "possess the right to receive such annuity or payment"? The Regulations (Sec. 20.2039–1(1) (ii)) establish that amounts are "payable" to a decedent "if, at the time of his death, the decedent was in fact receiving an annuity or other payments, whether or not he had an enforceable right to have payments cor-

---

4. See also paragraph 6, infra.

5. The plaintiff raises no question as to the "value", at the time of the decedent's death, of the payments receivable by Mrs. Bahen.

6. S.Rept. No. 1622, 83d Cong., 2d Sess., p. 470. It is worth noting that the Committee used the plural form ("payments") on occasion (S.Rept. No. 1622, at p. 472) and the examples it gives plainly cover a series of periodic payments (S.Rept. No. 1622 at p. 470). The House Committee Report (H.Rept. No. 1337) is to the same effect.

7. Since the Deferred Compensation Plan provided that, in case of Mr. Bahen's disability, the $100,000 would be paid to him in 60 equal installments, it may also be possible to consider it an "annuity"— leaving aside "other payment"—within the meaning of Section 2039. The Senate Committee said that for the purposes of the section "the term 'annuity' includes periodic payments for a specified period of time." S.Rept. No. 1622, 83d Cong., 2d Sess., p. 470 (and see example (5)); see also H.Rept. No. 1337, 83d Cong., 2d Sess., at p. A315 (example (5)).

tinue." Since Mr. Bahen was not receiving disability benefits when he died, this term of the statute is not satisfied.

We hold, however, that at his death Mr. Bahen did "possess the right" to receive the disability payments in the future if certain conditions were fulfilled, and therefore that the alternative requirement of Section 2039 is met. The intentional juxtaposition in the statute of amounts "payable" and those the decedent "possessed the right to receive" indicates that the former relates to the present (i. e. at time of death) and the latter to the future. The Regulations make clear that, in circumstances like these, the decedent's interest in future benefits, even if contingent, is sufficient.[8] Where the employer has offered a plan of this kind, the employee's compliance with his obligations to the company gives him "an enforceable right to receive payments in the future, whether or not, at the time of his death, he had a present right to receive payments." This provision of the Regulations both governs the Deferred Compensation Plan and faithfully reflects its essential characteristics. The arrangement may have been unilateral in inception but it was also irrevocable, and its irrevocability was deliberately communicated to the individuals covered. It thus became an integral article of Mr. Bahen's terms of employment by the C. & O. See S. Rept. No. 1622, 83d Cong., 2d Sess., at p. 471, quoted in paragraph 6, infra. There can be no doubt that he and the

others relied upon the Plan, as they were expected to do. See Worthen v. United States, 192 F.Supp. 727, 734 (D.Mass.). The right they possessed may have been contingent but it was not at the whim of the employer. Neuffer v. Bakery and Confectionery Workers, D.C.Cir., 1962, 307 F.2d 671.

In answer, the plaintiff insists that the decedent cannot be considered to have "possessed the right to receive" these disability payments because they were contingent on his becoming totally disabled before retirement, and would never have been received had he lived healthily to retirement age. Only future payments which are sure to be paid if the decedent lives to a designated time are covered by Section 2039, plaintiff says. However, as we have pointed out, in specifically covering amounts not payable to the decedent at the time of his death but which he then had merely the "right to receive", the statute and the Regulations obviously cover sums becoming due in the future; and there is no support in the statute's language for the distinction plaintiff makes between the different types of such future payments (at least if they are not forfeitable at the will of another). Both classes of payment are contingent and neither is sure. A benefit payable only if a man lives to a certain age is conditioned upon his living that long, just as a benefit payable only if he becomes disabled is conditional on his future disability.[9] Any distinction between the types seems

---

8. Section 20.2039–1(1) (ii) of the Regulations states:

> \*       \*       \*       \*       \*
>
> The decedent "possessed the right to receive" an annuity or other payment if, immediately before his death, the decedent had an enforceable right to receive payments at some time in the future, whether or not, at the time of his death, he had a present right to receive payments. In connection with the preceding sentence the decedent will be regarded as having had "an enforceable right to receive payments at some time in the future" so long as he had complied with his obligations under the contract or agreement up to the time of his death.
> \*   \*   \*

See also Example (3).

The same section of the Regulations declares that the payments going to make up an "annuity or other payment" under the statute—both with respect to the decedent and the beneficiary—"may be equal or unequal, *conditional or unconditional*, periodic or sporadic." (Emphasis added).

9. In the light of the wording, background, and purpose of Section 2039, it would be far too narrow a construction to limit the "right to receive" element to those *few future payments which the decedent was certain to receive*, i. e., amounts which would inevitably come to him or (if he were dead) to his heirs. In any

rejected by the Regulations which include "conditional" payments without qualification (see footnote 8, supra). Moreover, the comparable term "right to income" in related earlier provisions of the estate tax (such as present Section 2036, former Section 811(c) (1) (B)[10]) has been in effect read as including a contingent right to receive income. See, e. g., Marks v. Higgins, 213 F.2d 884 (C.A.2); Commissioner of Internal Revenue v. Estate of Nathan, 159 F.2d 546, 548–9 (C.A.7), cert. denied, 334 U.S. 843, 68 S.Ct. 1510, 92 L.Ed. 1767; Commissioner of Internal Revenue v. Arents' Estate, 297 F.2d 894, 896 (C.A.2), cert. denied, 1962, 369 U.S. 848, 82 S.Ct. 932, 8 L.Ed.2d 9; but cf. Hubbard's Estate v. Commissioner, 250 F.2d 492 (C.A.5). The legislative history of Section 2039 suggests that the rules applicable under Section 2036, in this connection, should likewise control under the new provision. S.Rept. No. 1622, 83d Cong., 2d Sess., at p. 472; H.Rept. No. 1337, 83d Cong., 2d Sess., at p. A316; see Stephens and Marr, Federal Estate and Gift Taxes (1959), pp. 108–109.[11]

5. Another requirement of Section 2039 is that the decedent's right to receive payments must be possessed "for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death." For the period from February 1953, when the Deferred Compensation Plan was adopted, to his death in November 1955, Mr. Bahen had the right to receive, under this Plan, $100,000 in 60 installments upon his total disability prior to retirement. He thus possessed the right to receive this "annuity or other payment" for a period which did not in fact end before his death—and, accordingly, this element of Section 2039 is also present. The correctness of this conclusion is shown by the Regulations (Sec. 20.2039–1(b) (2)), Example (5) of which concerns a plan under which an employer-contributed fund is to be divided, on retirement at age 60, one-half in a lump sum to the employee and one-half to his beneficiary, the entire amount going to the beneficiary if the employee died before retiring. The Regulations state that if the employee dies before retirement the payment to the beneficiary is includable in gross estate under Section 2039 because "the decedent possessed the right to receive a lump sum payment [at retirement] for a period which did not in fact end before his death [before retirement]." This regulation is consistent with the holdings, under older provisions of the estate tax, relating to the meaning of the phrase "for any period which does not in fact end before his death" (Commissioner v. Estate of Nathan, supra, 159 F.2d 546, 548 (C.A. 7), cert. denied, 334 U.S. 843, 68 S.Ct. 1510, 92 L.Ed. 1767; Marks v. Higgins, supra, 213 F.2d 884, (C.A.2); Commissioner of Internal Revenue v. Arents' Estate, 297 F.2d 894, 896 (C.A.2), cert. denied, 1962, 369 U.S. 848, 82 S.Ct. 932, 8 L.Ed.2d 9 [12])—rulings which Congress has indicated should be applied under Section 2039. S.Rept. No. 1622, 83d

event, the Regulations do not so confine the section and we cannot say that the statute is so unambiguously to the contrary that the Regulations are unreasonable or invalid.

10. Section 2036, and its predecessor, deal with transfers, among others, in which a decedent reserves a right to income for life for a period not ascertainable without reference to his death or for a period which does not in fact end before his death.

11. We are not inclined to believe that, with potential disability payments of the type involved here, it makes any difference under Section 2039 how probable it is that the decedent would, if he had lived, have obtained the benefits. But we point out that, if Mr. Bahen had survived his heart attack on November 11, 1955, it is not far-fetched to believe that he might have become totally disabled before reaching retirement age.

12. But see the summary dictum in Hubbard's Estate v. Commissioner, 250 F.2d 492, 496 (C.A. 5), which may tend in the other direction.

Cong., 2d Sess., at p. 472; H.Rept. No. 1337, 83d Cong., 2d Sess., at p. A316.

6. The last element necessary for coverage by Section 2039 is that Mr. Bahen must have "contributed" the "purchase price" of the "annuity or other payment" received by Mrs. Bahen which is to be included in the taxable estate. Subsection (b), which adds this requirement, provides:

"(b) *Amount includible.*—Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment."

The second sentence of this subsection automatically attributes the employer's contribution to the employee "if made by reason of his employment." This phrase is given broad scope by the Senate Committee Report (S.Rept. No. 1622, 83d Cong., 2d Sess., at p. 471, U.S.Code Cong. and Adm.News 1954, p. 5115) which holds that it applies "if, for example, the annuity or other payment is offered by the employer as an inducement to employment, or a continuance thereof, or if the contributions are made by the employer in lieu of additional compensation or other rights, if so understood by employer and employee whether or not expressly stated in the contract of employment or otherwise." The Deferred Compensation Plan, we have already noted, plainly meets this standard; it was an inducement to continued service with the C. & O. It is immaterial, we think, that the company did not formally make "contributions" to a separate fund, or actually purchase annuity or like contracts. Section 2039 (b) does not use the words "contribution", "contributed", or "purchase price" in a narrow literal sense, any more than subsection (a) uses "contract or agreement" in that rigid fashion. The section deals, for the area it covers, with the substance of transactions, not with the mechanical way they happen to be formulated. The C. & O.'s undertaking to make payment under the Plan was its "contribution," made by reason of the decedent's employment. Congress did not demand that the company create a tangible fund as a condition to coverage of its employees under this new estate tax provision, and so far as we can see there would be no reason to impose that requirement in a taxing statute such as this.

7. To all of this the plaintiff—in addition to challenging the existence in this case of some individual elements of coverage—protests that despite its literal language Section 2039 is applicable only where there is a true lifetime annuity payable to the decedent for life. Plaintiff correctly points out that the main impetus for the new section was the doubt in 1954 that the former estate tax provisions covered conventional joint and survivor annuities purchased wholly or partly *by the decedent's employer* (as distinguished from those purchased by the decedent himself). S.Rept. No. 1622, 83d Cong., 2d Sess., at p. 123; H.Rept. No. 1337, 83d Cong., 2d Sess., at p. 90. But the committee reports do not indicate that Congress, although using language in Section 2039 which goes well beyond the precise situation which initially impelled the change, restricted the scope of the new provision to those very circumstances alone. We find nothing to show that Congress desired the broader words it carefully used in Section 2039 not to have their normal significance and application; indeed some of the examples and words Congress used in the Committee Reports (see the references, supra) show that wider coverage was plainly intended. And the Treasury Regulations, as our prior discussion ex-

plains, cover annuities and payments to a decedent other than a full lifetime annuity.

8. Finally, we note briefly that Section 2039, as we construe it, is harmonious with the general objective of the federal estate tax to include in the decedent's estate (with designated exceptions) the valuable interests belonging to, accumulated by, or created by or for him, which pass to others at his death. Many such benefits promised, given, and paid for by an employer were specifically brought within this framework by the new section in 1954.[13] In subsection (b), quoted above, Congress provides that contributions by the employer "shall be considered to be contributed by the decedent if made by reason of his employment." Phrased in terms of the earlier concepts of a decedent's "property" "transferred" at his death, Section 2039 declares that annuities or other payments payable by an employer to his employee, and on his death to a beneficiary, constitute his property—created by him through his employer as part of the employment arrangement and in consideration of his continued services—which is transferred to another at his death. See the discussion in Lehman v. Commissioner, 109 F.2d 99, 100 (C.A.2); and Worthen v. United States, 192 F.Supp. 727, 733–4 (D.Mass.). A new provision of the estate tax which attempts to apply these fundamental concepts to a fairly well understood set of concrete situations should not be grudgingly read so as to chip away at the specific rule and to continue (as in the past) to leave as much as possible to the ambiguities of the general sections.

Plaintiff does not attack the validity of Section 2039, interpreted as we read it, and any challenge would be baseless under the accepted principles marking the outer boundaries of the constitutional power of Congress to levy the estate tax. See, e. g., United States v. Manufacturers National Bank, 363 U.S. 194, 80 S.Ct. 1103, 4 L.Ed.2d 1158; Fernandez v. Wiener, 326 U.S. 340, 351, ff, 66 S.Ct. 178, 90 L.Ed. 116; United States Trust Co. v. Helvering, 307 U.S. 57, 60, 59 S.Ct. 692, 83 L.Ed. 1104; United States v. Jacobs, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763; Lehman v. Commissioner, supra, 109 F.2d 99, 100 (C.A.2).

B. *The Death Benefit Plan:* It is a more difficult question whether the Death Benefit Plan—under which the C. & O. paid Mrs. Bahen a sum equal to Mr. Bahen's salary for three months—is covered by Section 2039. Under that arrangement no benefits were payable to the decedent during his life, and if the Plan were to be judged by itself it would fall outside the ambit of the section for lack of "an annuity or other payment" to the decedent. The defendant contends that this factor is present because the words "or other payment" can include the decedent-employee's regular salary; the Death Benefit Plan must be taken, defendant says, together with Mr. Bahen's entire employment arrangement including his ordinary compensation. We cannot agree. Since employees normally receive salary or wages, defendant's interpretation would effectively obliterate, for almost all employees, the express requirement in Section 2039 of "an annuity or other payment" to the decedent. If Congress had intended that strange result, it would certainly have mentioned or referred to it.[14] The Government's argument also runs counter to the theory and examples of the Regulations (Sec.

---

13. With the major exception of plans qualified under Section 401 of the Code.

14. The Government points to Example (4) in the Senate Report (S.Rept. No. 1622, 83d Cong., 2d Sess. at p. 470)—which on the surface omits any "annuity or other payment" to the decedent and therefore, according to the Government, must incorporate the employee's salary as satisfying that element—but we agree that this interpretation of the example cannot be correct. See Bittker, Estate and Gift Taxation under the 1954 Code: The Principal Changes, 29 Tul.L.Rev. 453, 469–470, fn. 58 (1955); Pincus, Estate Taxation of Annuities and Other Payments, 44 Va.L.Rev. 857, 866–867 (1958).

20.2039–1) which impliedly exclude ordinary salary from consideration.

But the Government makes another point which we do accept as bringing the Death Benefit Plan under Section 2039. The suggestion is that this Plan should not be viewed in isolation but must be considered together with the Deferred Compensation Plan—as if both arrangements were combined into one plan, providing two types of benefits for beneficiaries after the employee's death but only one type of benefit (disability compensation) to the employee himself. There is some factual support, if that be necessary, for looking at the two plans together, since the Death Benefit Plan was adopted in January 1952 and the Deferred Compensation Plan only a year later in February 1953. There appears to be a common genesis and a unifying thread.

The firmer legal basis is provided by the Regulations (Sec. 20.2039–1(b) (2), Example (6)) which provide: "All rights and benefits accruing to an employee and to others by reason of the employment (except rights and benefits accruing under certain plans meeting the requirements of section 401(a) (see § 20.2039–2)) are considered together in determining whether or not section 2039 (a) and (b) applies. The scope of Section 2039(a) and (b) cannot be limited by indirection." [15] Effect must be given to this declaration, adopted pursuant to the Treasury's recognized power to issue regulations and not challenged by plaintiff, since it does not violate the terms or the spirit of Section 2039. In view of the general purpose of the statute to cover a large share of employer-contributed payments to an employee's survivors, it is not unreasonable to lump together all of the employer's various benefit plans taking account of the employee's death (except those qualified under Section 401(a), which are excepted by the statute, see footnotes 2 and 3, supra) in order to decide whether and to what extent Section 2039 applies to his estate. There is no immutable requirement in the legislation that each plan separately adopted by a company must be considered alone. One good ground for rejecting that position is to prevent attempts to avoid the reach of the statute by a series of contrived plans none of which, in itself, would fall under the section.[16]

This directive in the Regulations that all rights and benefits "are to be considered together"—read with another part of the same Regulation which defines "contract or agreement" under Section 2039 to cover "any combination of arrangements, understandings, or plans arising by reason of the decedent's employment"—requires the two plans of the C. & O. to be deemed a coordinated whole for the purposes of Section 2039. On that view the payments under the Death Benefit Plan were includable in the decedent's gross estate for the reasons given above with respect to the Deferred Compensation Plan. If the two Plans are integrated into one, each element required for coverage of all payments is present.

We conclude that the plaintiff is not entitled to a refund of the estate taxes assessed because of the inclusion by the Commissioner of Internal Revenue in the decedent's estate of the value of the benefits paid by the C. & O. to his widow under the two plans. Judgment will be entered for the defendant and the petition will be dismissed.

It is so ordered.

15. Example (6), which contains these statements, describes two separate plans neither of which, by itself, would meet the requirements of Section 2039 but which would satisfy those requirements if the plans were considered as one. The Regulations indicate that the plans are to be viewed together, for the reason stated above in the text.

16. There is no suggestion that the two plans in this case, which were adopted in 1952 and 1953 before Section 2039 was enacted, formed part of any such scheme. But the statute and the Regulation can establish a prophylactic across-the-board rule applicable to all cases, regardless of the purity of motivation in a particular instance.

**836**

JONES, Chief Judge, and DURFEE, and LARAMORE, Judges, concur.

WHITAKER, Judge (concurring).

This case presents what is to me a novel problem. The Deferred Compensation Plan of the C. & O. Railway was adopted solely on its own initiative; it was not the result of bargaining between the railroad and its officers. At the death of the employee the railroad paid to the employee's beneficiaries the amount it had voluntarily agreed to pay. Hence, it has been difficult for me to discern any transfer from the decedent to the beneficiaries. If there was no transfer from him to them, the amount they received under the Plan could not constitutionally be included in his gross estate for estate tax purposes.

The Constitution, art. 1, § 9, cl. 4 provides that "No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census * * *." This prohibits the levy of a direct tax on this property. Only the states can levy such a tax.

I suppose this constitutional prohibition has so far survived the innovations of modern constitutional "interpretation." If it has, the Federal Government has no power to tax property passing at death unless it can be justified as an excise tax. It was so justified by the Supreme Court in Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969, as a tax on the privilege of transmitting property at death to the survivors of the decedent. The rationale of that decision is well known and I shall not elaborate on it in this opinion.

It follows from this, it seems to me, that, if the decedent did not transfer this property at death, it cannot be included in his gross estate for estate tax purposes. The question then is, did the decedent transfer it?

Although the Plan was initiated by the railroad and was wholly of its own volition, nevertheless, the Plan did contain this provision:

"In any case, an officer leaving the service of the Company for any rea-

son other than death, incapacity as hereinbefore defined, or retirement, shall forfeit all benefits under the Deferred Compensation Plan."

Under this I suppose it is not unreasonable to say that, by the act of continuing in the employ of the railroad, the employee made it possible for his beneficiaries to receive what the railroad agreed to pay them. They were entitled to benefits under the Plan only if the employee remained with the railroad until death or until he was eligible for retirement. Therefore, by remaining with the company, he fulfilled that condition without which the beneficiaries would have been entitled to nothing. So it can be said, and properly so, I suppose, that the decedent "had a hand" in the transmission of the property to the beneficiaries, and, hence, Congress intended it to be included in his gross estate.

I concur.