Estate of Leslie E. Johnson, Deceased, Ruth N. Johnson, Executor, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 6306–69. Filed August 9, 1971.

*Rex B. Gilchrist* and *D. D. Reynolds*, for the petitioner.
*R. Burns Mossman*, for the respondent.

Fay, *Judge:* Respondent determined deficiencies in petitioner's estate tax of $4,449.39. Concessions having been made, the only issue to be decided is to what extent the value of two annuity contracts owned by decedent must be included in his gross estate.

### FINDINGS OF FACT

Some of the facts have been stipulated and are, together with the exhibits attached to the stipulation of facts, incorporated herein by this reference.

The decedent, Leslie E. Johnson (hereafter referred to as Leslie or decedent), died in Story County, Iowa, on December 20, 1967. Ruth Johnson, decedent's wife, was duly appointed executor of Leslie's estate and at the time of filing the petition herein resided in Ames, Iowa. As executor, Ruth Johnson timely filed an estate tax return with the district director of internal revenue, Des Moines, Iowa.

From sometime prior to August 1954 until his death, decedent was employed by the Iowa State University of Science and Technology (hereafter referred to as Iowa State) at Ames, Iowa. At the date of his death decedent was a full professor and head of the department of animal science in the College of Agriculture.

On August 1, 1954, under the auspices and with the consent of the university, decedent was issued two annuity contracts. From the date of issuance to the date decedent died, contributions were made toward the purchase of said annuities by both decedent and his employer, Iowa State.

The first of these annuities was contract No. A91751–6 issued by Teachers Insurance and Annuity Association of America (T.I.A.A.). The value of this contract on decedent's death was $14,616.36 and the beneficiary was decedent's wife.

The second annuity owned by decedent was contract No. P17109–5 issued by College Retirement Equities Fund (C.R.E.F.). The value of this annuity at the time of decedent's death was $22,593.55 with decedent's wife as the beneficiary.

The total value of the two contracts was $37,209.91. The total contributions toward the purchase of both annuities amounted to $25,933.28 consisting of the following:

|  | T.I.A.A. | C.R.E.F. |
| --- | --- | --- |
| Decedent's contribution | $2,573.33 | $2,573.33 |
| Employer's contribution | 9,846.92 | 10,939.70 |
| Total contribution | 12,420.25 | 13,513.03 |

The contributions made by decedent's employer constitute 80.11 percent of the total contributions. No portion of the proceeds of these contracts was payable to or received by either decedent or his estate.

Decedent's employer, Iowa State, is a land-grant college and a publicly owned State university. It was organized under the laws of the State of Iowa for the purpose of providing educational, research, and extension services. No part of the net earnings inure to the benefit of any private shareholder or individual. No part of Iowa State's activities constitutes an intervention into politics, the carrying on of propaganda, or otherwise attempting to influence legislation. The sole exception to this is the interest taken by the university in legislation directly affecting its organization, appropriations, or function.

Iowa State in the academic year 1967–68 had a total student enrollment approaching 19,000 and a faculty of approximately 1,800. Its curricula included courses in the Colleges of Agriculture, Education, Engineering, Home Economics, Science and Humanities, and Veterinary Medicine. Iowa State, under any definition, is an educational institution.

Operation of the university is generally governed by the statutes of the Iowa Code and vested in the State Board of Regents. Immediate regulation and direction of the academic, research, and extension activities of the university are, and were at the time of decedent's death, delegated to the president of the university.

Funding of the university's activities is composed of State appropriations, student tuition fees, contracts, sales, private gifts, and grants and Federal funds and endowments. The State appropriations constituted nearly 22 percent of the university's total funds in academic year 1966–67 and approximately 26 percent in 1967–68.

In computing decedent's gross estate for tax purposes petitioner excluded 80.11 percent, or $29,808.86, of the total value of the two annuity contracts. Respondent, determining that such an exclusion was not justified, redetermined the estate's tax liability including the entire value of the annuities which gave rise to the deficiency now in dispute.

OPINION

The only issue to be decided is whether section 2039 (c) (3)[1] applies to the facts of this case. The answer hinges on whether Iowa State, decedent's employer, fits under the umbrella of the selected qualifying organizations contemplated by section 2039.

For over 20 years decedent was employed by Iowa State or its predecessor. During the latter part of his tenure decedent was a full professor and chairman of the animal science department. Commencing in 1954 and ending with his demise decedent and his employer made joint contributions to two annuity funds. At the time of his death decedent's annuities had a total value of $37,209.91. The total contributions toward the annuities were $25,933.28, 80.11 percent of which had been contributed by Iowa State. It is clear that if Iowa State is one of those organizations within the scope of section 2039(c) (3), decedent's estate should be permitted to exclude 80.11 percent of the $37,209.91 value from the gross estate.

There is a dual requirement for qualification under section 2039 (c) (3).[2] First, the organization must be one "referred to in section 503 (b) (1), (2) or (3)." Section 503 provides:

---

[1] Unless otherwise specified all section references are to the Internal Revenue Code of 1954 prior to its amendment by the Tax Reform Act of 1969.
SEC. 2039. ANNUITIES.
(c) EXEMPTION OF ANNUITIES UNDER CERTAIN TRUSTS AND PLANS.—Notwithstanding the provisions of this section or of any provision of law, there shall be excluded from the gross estate the value of an annuity or other payment receivable by any beneficiary (other than the executor) under—

* * * * * * *

(3) a retirement annuity contract purchased for an employee by an employer which is an organization referred to in section 503(b) (1), (2) or (3), and which is exempt from tax under section 501(a) ; or

* * * * * * *

If such amounts payable after the death of the decedent under a plan described in paragraph (1) or (2), under a contract described in paragraph (3), or under chapter 73 of title 10 of the United States Code are attributable to any extent to payments or contributions made by the decedent, no exclusion shall be allowed for that part of the value of such amounts in the proportion that the total payments or contributions made by the decedent bears to the total payments or contributions made. For purposes of this subsection, contributions or payments made by the decedent's employer or former employer under a trust or plan described in paragraph (1) or (2) shall not be considered to be contributed by the decedent, and contributions or payments made by the decedent's employer or former employer toward the purchase of an annuity contract described in paragraph (3) shall, to the extent excludable from gross income under section 403(b), not be considered to be contributed by the decedent. This subsection shall apply to all decedents dying after December 31, 1953. For purposes of this subsection, contributions or payments on behalf of the decedent while he was an employee within the meaning of section 401(c) (1) made under a trust or plan described in paragraph (1) or (2) shall be considered to be contributions or payments made by the decedent. For purposes of this subsection, amounts payable under chapter 73 of title 10 of the United States Code are attributable to payments or contributions made by the decedent only to the extent of amounts deposited by him pursuant to section 1438 of such title 10.

[2] It should be pointed out that the Tax Reform Act of 1969 amended sec. 2039 to require that the organization in question be one "referred to in sec. 170(b) (1) (A) (ii) or (vi), or which is a religious organization (other than a trust), and which is exempt from tax under section 501(a)." Sec. 170(b) (1)·(A) (ii) and (vi) are substantially identical to sec. 503(b) (2) and 503(b) (3), respectively.

SEC. 503. REQUIREMENTS FOR EXEMPTION.

(a) DENIAL OF EXEMPTION TO ORGANIZATIONS ENGAGED IN PROHIBITED TRANSACTIONS.—

(1) GENERAL RULE.—

(A) An organization described in section 501(c)(3) which is subject to the provisions of this section shall not be exempt from taxation under section 501(a) if it has engaged in a prohibited transaction after July 1, 1950.

(B) An organization described in section 501(c)(17) which is subject to the provisions of this section shall not be exempt from taxation under section 501(a) if it has engaged in a prohibited transaction after December 31, 1959.

(C) An organization described in section 401(a) which is subject to the provisions of this section shall not be exempt from taxation under section 501(a) if it has engaged in a prohibited transaction after March 1, 1954.

*     *     *     *     *     *     *

(b) ORGANIZATIONS TO WHICH SECTION APPLIES.—This section shall apply to any organization described in section 501(c)(3) or (17) or section 401(a) except—

(1) a religious organization (other than a trust) ;

(2) an educational organization which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on;

(3) an organization which normally receives a substantial part of its support (exclusive of income received in the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501(a)) from the United States or any State or political subdivision thereof or from direct or indirect contributions from the general public;

Obviously section 503(b)(1) is inapplicable to the case at bar; just as obviously, however, section 503(b)(2) and (b)(3) does apply. There can be no question that Iowa State is an educational organization. It maintains a faculty approaching 2,000 in number, carries a regular curriculum in some six colleges or departments, and services in the neighborhood of 20,000 students. A serious argument to the contrary cannot be made. Moreover, we think Iowa State falls within section 503(b)(3) since a substantial portion of its support is received from the State of Iowa. To meet the requirement of section 2039 an organization need only fall within one of three subparts under section 503(b). Iowa State satisfies two.

Respondent argues that section 503(b)(1), (2), and (3) must be read in conjunction with the introductory language of section 503(b) which, he says, imposes a preliminary requirement that the organization be "described in section 501(c)(3)" and that Iowa State is not so described. First, we think section 2039(c)(3) points no further than to the three subparts of section 503(b) mentioned therein. We think this conclusion is unavoidable when section 503 is viewed as a whole. The overall import of section 503 is the denial of tax-exempt

status to organizations engaged in prohibited transactions. Certain types of organizations, however, are permitted to retain their exempt status even though engaging in prohibited activities. Coincidentally, the same types of organizations excepted from denial of tax-exempt status were intended by Congress to be within the scope of section 2039. This latter section simply lifts the three parts of the section out of their unrelated context and adopts them as qualifying standards.

Secondly, even if we felt compelled to incorporate the introductory language of 503(b) we believe Iowa State would still qualify. Section 503(b) says "This section shall apply to any organization described in section 501(c)(3)." Section 501(c)(3) in turn provides:

SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\*      \*      \*      \*      \*      \*      \*

(3) Corporations and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

Without deciding at this point whether Iowa State is exempt from taxation under section 501, it is clear to this Court that the organization is one of those described by section 501(c)(3). It was organized and operated exclusively for educational purposes, no part of the net earnings inures to the benefit of any private individual, no substantial part of the activities amounts to the carrying on of propaganda or otherwise attempting to influence legislation, and it does not participate or intervene in any political campaign on behalf of any candidate for public office. There could not be a more fitting description of Iowa State than that provided by section 501(c)(3).

The first requirement of section 2039 having been met, we now turn to the second and more difficult question. Can Iowa State be said to be "exempt from tax under section 501(a)"?

We begin by pointing out that from Iowa State's standpoint it is generally irrelevant whether its exemption from taxation is a result of section 501(a) or the broader exemption to which it is entitled as a wholly owned entity of the State of Iowa. As a practical matter a university's exemption from taxation is generally no more than an amnesty from filing returns since generally the costs of operation exceed its income. There are occasions, however, such as the one before

us, where the nature of a university's exemption becomes the focal point in determining a question of tax law.

In a two-pronged attack respondent argues that Congress did not intend State-owned universities to fall within the scope of section 501(a) and that Iowa State is integrally related with the State of Iowa and therefore precluded from inclusion with section 501(a). For the reasons set out hereinafter we think both arguments are without merit.

To accept respondent's first argument would require attributing to Congress an intent to treat State universities differently than private universities. Absent any logical reason for making such a distinction, we do not believe that such was the intent of Congress in enacting section 501(a). We are aware, of course, that Congress may have not specifically contemplated that section 501(a) exempt State schools from taxation. Such an omission, however, undoubtedly resulted from a belief that, in view of the overriding exemption, such a provision would be superfluous. That being the case, it would be anomalous for us to conclude that such institutions are to be treated less favorably than those contemplated by the provisions in question.

This same rationale neutralizes any effect that might be afforded respondent's argument that Congress, having dealt specifically with public schools in sections 511(a) (2) (B) and 513(a) (2), would likewise have expressly included them under section 501(a) had they so intended. The sections pointed out by respondent relate to the taxation of unrelated business income. Recognizing that public schools are generally exempt from taxes due to their State-owned status rather than section 501(a), to omit them from the sections requiring taxation of unrelated-business income would leave the door open for a claim of complete tax immunity. By expressly pointing out the taxability of unrelated-business income of tax-exempt public schools as well as organizations necessarily exempt under section 501(a), Congress in no way intimated an intent that public educational institutions be treated differently than private ones. In fact the goal of the cited legislation is to the contrary.

Respondent's own revenue rulings can be read as supporting petitioners herein. In Rev. Rul. 55–319, 1955–1 C.B. 119, respondent stated the following:

An inquiry has been received whether (1) a wholly-owned State instrumentality may also qualify for exemption from Federal income tax under section 501(c)(3) of the Internal Revenue Code of 1954 * * *
. It is held that where an organization desires to have the benefit of a particular tax feature extended to its employees, such as the exception provided by section 403 of the Code, which depends on exemption under section 501(a) of an employer described in section 501(c)(3), and the particular organization meets the statutory requirements for exemption under section 501(c)(3) of the Code, it may be granted exemption thereunder, regardless of the fact that it also qualifies as a wholly-owned State instrumentality and, as such, would not be subject to Federal income tax.

This ruling was amplified by Rev. Rul. 60–384, 1960–2 C.B. 172, 173, wherein respondent said:

Revenue Ruling 55–319 holds, in part, that where an organization desires to have the benefit of a particular tax feature extended to its employees, such as the exemption provided by section 403 of the Code, which depends on exemption under section 501(a) of an employer described in section 501(c)(3), and the particular organization meets the statutory requirements for exemption under section 501(c)(3) of the Code, it may be granted exemption thereunder, regardless of the fact that it also qualifies as a wholly-owned state instrumentality and, as such, would not be subject to Federal income tax.

Thus, such an organization may be exempt under section 501(c)(3) of the Code if it is organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals.

A state or municipality itself, however, would not qualify as an organization described in section 501(c)(3) since its purposes are clearly not exclusively those described in section 501(c)(3) of the Code. See for example, *Estate of John C. F. Slayton* v. *Commissioner*, 3 B.T.A. 1343. It follows, therefore, that where the particular branch or department under whose jurisdiction the activity in question is being conducted is an integral part of a state or municipal government the provisions of section 501(c)(3) would not be applicable. For example, where a public school, college, university or hospital is an integral part of a local government, it could not meet the requirements for exemption under section 501(c)(3) of the Code.

On the other hand a wholly-owned state or municipal instrumentality which is a counterpart of an organization described in section 501(c)(3) of the Code such as a separately organized school, college, university, or hospital may qualify for exemption under section 501(c)(3) of the Cole. If the organization conducting the activity, although a separate entity, is clothed with powers other than those described in section 501(c)(3) it would not be a clear counterpart of a section 501(c)(3) organization. For example, where a wholly-owned state or municipal instrumentality exercises enforcement or regulatory powers in the public interest such as health, welfare, or safety, it would not be a clear counterpart of an organization described in section 501(c)(3) of the Code even though separately organized since it has purposes or powers which are beyond those described in section 501(c)(3).

We find it no easy task to draw the distinction so easily made by respondent between a public school, college, university, or hospital that is an *integrally related part of a local government* and one that is *separately organized*. We think it a needless exercise in semantics to draw such nebulous lines. The real question is, and must be, whether the organization, even though State owned, fits within the scope of section 501(c)(3). Once this question is answered in the affirmative the organization should be dealt with on an equal plane with organizations who must employ section 501(a) to receive tax-exempt status.

Even were we to proceed along the path forged by respondent we would reach the same conclusion. By his own Rev. Rul. 60–384 set out *supra*, respondent concedes that a separately organized, wholly State-owned university that is a counterpart of an organization described in

section 501(c)(3) may qualify for exemption under that section. We think Iowa State typifies the instance in which such a principle should be applied. Iowa State is certainly a counterpart to every private university qualifying under section 501(c)(3). We also think it is separately organized. It is governed by a board of regents and operated by a university president and his staff. While university officials must look to the State legislature for funds and at times to public officials for guidance, such sojourns into the public realm do not strip it of its independent separate character.[3]

Based on the foregoing we conclude that Iowa State is an employer within the scope of section 2039(c)(3) and that the portion of the value of the annuities in question attributable to contributions made by Iowa State is entitled to be excluded from decedent's gross estate.

*Decision will be entered under Rule 50.*

---

[3] We think Rev. Rul. 68–294, 1968–1 C.B. 46, cited by respondent, is distinguishable from the instant case. The inquiry therein involved a death benefit exclusion under sec. 101(b) for amounts received as death benefits by the beneficiary of a public school teacher. For exclusion under sec. 101(b) the decedent's employer must meet the same requirements as under sec. 2039(c)(3). Respondent after ruling that the public school was an integral part of the local government held that there was no exclusion under sec. 101(b) nor would there be under sec. 2039(c)(3). We think the circumstances involved in the ruling are distinguishable on their facts from the case before us. The school involved therein was a local public school whose makeup and organization vary markedly from the statewide university involved herein.

