ESTATE OF WILLIAM PERL, DECEASED, SIDNEY FINKEL AND HELEN W. FINKEL, EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3055–79.    Filed May 27, 1981.

*Sidney Finkel,* for the petitioner.
*Bernard Wishnia,* for the respondent.

OPINION

TANNENWALD, *Judge*: Respondent determined a deficiency of $20,077.06 in petitioner's Federal estate taxes. Concessions having been made by petitioner, the issue remaining is whether the proceeds of an insurance policy purchased by the decedent's employer as part of an employee benefits program are includable in the decedent's gross estate.

All the facts of this case were stipulated.[1] The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioner is the Estate of William Perl, deceased, represented by its executors, Sidney Finkel and Helen W. Finkel. William Perl died on September 22, 1976, and a timely Federal estate tax return was filed for his estate. At the time the petition was filed, petitioner's executors resided in Montclair, N.J.

From December 1964 through September 1969, the decedent was employed by the New York University Medical Center. From September 1969 through his death in 1976, the decedent was employed as a biophysicist by the New Jersey College of Medicine and Dentistry. Because of his employment with the New Jersey College of Medicine and Dentistry, the decedent was a participant in the Alternate Benefit Program (ABP) as established by New Jersey statute. See N.J. Stat. Ann. sec. 18A:66–167 et seq. (West Supp. 1980). In addition, the decedent possessed two annuities (T.I.A.A. and C.R.E.F.) which had been purchased while the decedent was employed by the New York University Medical Center.

Under the terms of the ABP, the State of New Jersey purchased a life and disability insurance policy for the decedent from the Prudential Life Insurance Co. All premium payments on this policy were mae by the New Jersey State treasurer. This policy provided, inter alia, that if the decedent died while in active service, his designated beneficiary would receive 3½ times his annual base salary. It also provided that if the decedent became totally disabled, he would receive a specified monthly sum until he reached the age of 70. The decedent, in fact, died while in active service, and the sum of $139,062, representing 3½ times the decedent's salary, was paid to his designated beneficiaries, namely, the trustees of a revocable trust which the decedent had created inter vivos. In addition,

---

[1]The only proffered evidence other than the stipulation of facts and exhibits was the testimony of Mr. Kenneth F. Cook, deputy director within the New Jersey Division of Pensions. Mr. Cook was called by respondent, and his testimony concerned the scope and administration of the retirement and death benefits plans provided by New Jersey statutes. Although we permitted Mr. Cook to testify over petitioner's objection, we have concluded that at best only some of his testimony is peripherally relevant to the issue before us, which, in light of the stipulation of facts, we consider as posing solely an issue of law. Accordingly, we have not taken any of Mr. Cook's testimony into account in reaching our decision.

these trustees received $75,314.66 in liquidation of the decedent's interests in the above-mentioned annuities.

Respondent argues that the $139,062 payment made to the decedent's beneficiaries is includable in the decedent's gross estate pursuant to section 2042(2)[2] as the proceeds of a life insurance policy over which the decedent possessed an incident of ownership. Petitioner contends, however, that such inclusion is precluded by the overriding provisions of section 2039.

It is clear that the $139,062 payment represented the proceeds of an insurance policy. Petitioner argues that, because the policy lacked cash-surrender value and was neither assignable nor subject to levy (see N.J. Stat. Ann. sec. 18A:66–188), it was not "insurance." That is incorrect; the touchstone of insurance is risk distribution. *Helvering v. Le Gierse*, 312 U.S. 531 (1941); see sec. 20.2039–1(d), Estate Tax Regs. New Jersey purchased group term life insurance for the decedent (see N.J. Stat. Ann. sec. 18A:66–177), and that falls plainly within the scope of section 2042. See sec. 20.2042–1(a)(1), Estate Tax Regs.

The decedent retained until his death the power to designate the beneficiary of his insurance. See N.J. Stat. Ann. sec. 18A:66–180. It is well settled that such power is an incident of ownership within the meaning of section 2042(2). *Piggott's Estate v. Commissioner*, 340 F.2d 829, 836 (6th Cir. 1965), affg. a Memorandum Opinion of this Court; sec. 20.2042–1(c)(2) and (c)(4), Estate Tax Regs.; see *Commissioner v. Noel's Estate*, 380 U.S. 678 (1965).

In view of the foregoing, it is clear that the proceeds of the insurance are includable in decedent's gross estate under section 2042(2) unless petitioner is correct in its contention that such proceeds are excludable by reason of section 2039(c).

Section 2039(c), as in effect at the time of the decedent's death, read in pertinent part:

(c) EXEMPTION OF ANNUITIES UNDER CERTAIN TRUSTS AND PLANS.—*Notwithstanding the provisions of this section or of any provision of law*, there shall be excluded from the gross estate the value of an annuity *or other payment* (other than a lump sum distribution described in section 402(e)(4), determined without regard to the next to the last sentence of section 402(e)(4)(A)) receivable by any beneficiary (other than the executor) under—

---

[2]All section references are to the Internal Revenue Code of 1954 as amended and in effect in the year of the decedent's death.

(1) An employees' trust (or under a contract purchased by an employees' trust) forming part of a pension, stock bonus, or profit-sharing plan which, at the time of the decedent's separation from employment (whether by death or otherwise), or at the time of termination of the plan if earlier, met the requirements of section 401(a);

(2) A retirement annuity contract purchased by an employer (and not by an employees' trust) pursuant to a plan which, at the time of decedent's separation from employment (by death or otherwise), or at the time of termination of the plan if earlier, was a plan described in section 403(a);

(3) A retirement annuity contract purchased for an employee by an employer which is an organization referred to in section 170(b)(1)(A)(ii) or (vi), or which is a religious organization (other than a trust), and which is exempt from tax under section 501(a); or

(4) Chapter 73 of title 10 of the United States Code.
[Emphasis added.]

Respondent contends that section 2039(c) does not apply because the life insurance proceeds were not payable under either a trusteed pension plan or a retirement annuity contract. Petitioner none too clearly seems to adopt a contrary posture as to both issues.[3]

At the outset, we note that both the petitioner and respondent treat the T.I.A.A. and C.R.E.F. annuity contracts as being entirely separate from the life insurance and disability policy. Consequently, we do not have before us any question as to the applicability of section 2039(a). See the discussion in both the Second Circuit Court of Appeals and this Court in *Estate of Schelberg v. Commissioner*, 612 F.2d 25 (2d Cir. 1979), revg. 70 T.C. 690 (1978). We also note that respondent has made no argument that such proceeds do not fall within the phrase "other payment" contained in section 2039(c). See Rev. Rul. 70–211, 1970–1 C.B. 190; Rev. Rul. 67–371, 1967–2 C.B. 329. See also sec. 20.2039–1(d), Estate Tax Regs. But see H. Rept. 1337, 83d Cong., 2d Sess. A316 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 472 (1954). Thus, the focus of this case is whether the life insurance and disability policy meets the requirements of subsection (c)(1), (c)(2), or (c)(3) of section 2039 so that the phrase, "Notwithstanding * * * any provision of law" contained in section 2039(c) operates to negate the

---

[3]Petitioner also argues that sec. 2039(e), dealing with Individual Retirement Accounts (IRA), is applicable. That argument is plainly without merit, not only because by no stretch of the imagination can the insurance policy constitute an IRA (see, e.g., sec. 408(a)(3) and (b)(3)), but also because sec. 2039(e) is applicable only to estates of decedents dying after Dec. 31, 1976.

inclusion of the proceeds of the life insurance under section 2042(2). We hold that it does not.

Section 2039(c)(1) applies to payments received under an employees' trust forming part of a pension, stock bonus, or profit-sharing plan meeting the requirements of section 401(a). Petitioner has not argued—and the record would not support such an argument—that the ABP is a profit-sharing or stock bonus plan. We hold for the following reasons that it is also not a pension plan.[4]

Section 1.401–1(a)(2), Income Tax Regs., defines a pension plan as "a definite written program and arrangement which is communicated to the employees and which is established and maintained by an employer * * * to provide for the livelihood of the employees or their beneficiaries after the retirement of such employees." This regulation cross-references more specific guidelines, which provide—

A pension plan within the meaning of section 401(a) is a plan established and maintained by an employer primarily to provide systematically for the payment of * * * benefits to his employees over a period of years, usually for life, after retirement. * * * A pension plan may provide for the payment of a pension due to disability and may also provide for the payment of *incidental* death benefits through insurance or otherwise. However, a plan is not a pension plan if it provides for the payment of benefits not customarily included in a pension plan such as layoff benefits or benefits for sickness * * * [Sec. 1.401–1(b)(1)(i), Income Tax Regs. Emphasis added.]

Although the ABP had elective pension-type provisions, see N.J. Stat. Ann. sec. 18A:66–190, the only *guaranteed* provisions (and the only provisions involved herein) were for disability benefits and life insurance. Far from being incidental, these "not customarily included in a pension plan" provisions dominate the ABP, at least insofar as it applies to the decedent herein. The Commissioner's interpretation of "pension plan" in section 1.401–1(b)(1)(i), Income Tax Regs., has not been challenged by petitioner. Moreover, there is no evidence of record that the decedent sought to obtain the benefits of the aforementioned elective provisions. He had only the life insurance and disability coverage.[5] Thus, insofar as it applies to decedent herein, the

---

[4] In light of this holding, we need not consider whether an "employees' trust" was created.

[5] The parties have treated the T.I.A.A. and C.R.E.F. annuities as being separate. See p. 864 *supra.*

ABP plainly does not fall within the definition of a pension plan as specified in section 1.401–1(b)(1)(i), Income Tax Regs. Consequently, section 2039(c)(1) is inapplicable.

Subsections (c)(2) and (c)(3) of section 2039 apply only to amounts received under a "retirement annuity contract." Although a "retirement annuity contract" may, under certain circumstances, include an "incidental" life insurance policy (compare secs. 1.404(a)–3(a), 1.404(a)–8(a)(1), Income Tax Regs.), we think that the phrase, as used in section 2039(c)(2) and (c)(3), was not intended to include an arrangement, such as that involved herein, which provides nothing more than life insurance and disability benefits. Granted that the phrase "retirement annuity contract" is not defined either in the statute or the legislative history, we think it clear that Congress contemplated that the phrase would be limited to those situations where, at the time of death, the decedent was either receiving or possessed the potential right to receive a payment, whether periodic or lump sum, or a retirement benefit in lieu thereof. H. Rept. 1337, *supra* at A314-A316; S. Rept. 1622, *supra* at 469–472.[6] See *Estate of Fusz v. Commissioner*, 46 T.C. 214, 216–217 (1966).

It is obvious that, aside from the potential for receiving disability benefits, decedent had no right or potential right to any payments provided for by the policy. Petitioner's attempt to seek sustenance from the references to "retirement annuity" in the policy simply does not wash. Those references merely provide triggers as to the amounts to be paid and do not accord a substantive right to payment. Petitioner has not argued that the potential for payment of disability benefits to the decedent is sufficient to convert the policy into a "retirement annuity contract," and, in any event, we have serious doubts that such potential would in fact be sufficient in a situation where, as is the case herein, only a life insurance and disability policy is involved. Compare *Estate of Schelberg v. Commissioner, supra*; *Bahen's Estate v. United States*, 158 Ct. Cl. 141, 305 F.2d 827,

---

[6]Subsec. (3)(c) of sec. 2039 was added by Senate amendment to the Technical Amendments Act of 1958, Pub. L. 85–866, sec. 23(e)(2), 72 Stat. 1622, and would be applicable if the other requirements of that subsection were satisfied. *Estate of Johnson v. Commissioner*, 56 T.C. 944 (1971). See Rev. Rul. 79–301, 1979–2 C.B. 327. There is nothing in the legislative history of that amendment indicating a different view as to the meaning of the phrase "retirement annuity contract." S. Rept. 1983, 85th Cong., 2d Sess. 153 (1958), 1958–3 C.B. 922; H. Rept. 2632 (Conf.), 85th Cong., 2d Sess. 24 (1958), 1958–3 C.B. 1188.

830–832 (1962). In this connection, we note that Congress avoided the "retirement annuity" language when referring to a "contract" in section 2039(c)(1).

In short, as we view this case, the proceeds of the life insurance are not excludable under section 2039(c)(1), (c)(2), or (c)(3). Accordingly, they are includable in the decedent's gross estate under section 2042(2).

*Decision will be entered for the respondent.*